(No. 28868.—

The People of the State of Illinois, Defendant in Error *vs.* John Joe Max, Plaintiff in Error.

*Opinion filed September 19, 1945—Rehearing denied Nov. 19, 1945.*

W. G. Anderson, (Elwyn E. Long, of counsel,) both of Chicago, for plaintiff in error.

· George F. Barrett, Attorney General, and William J. Tuohy, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, and Melvin S. Rembe, all of Chicago, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

An indictment was returned in the criminal court of Cook county, the first count charging the defendant, John

Joe Max, with an assault with intent to murder his wife, Elizabeth Max, and two other counts alleging assaults with intent to inflict bodily injury upon her. Defendant pleaded not guilty, and waived a trial by jury. The court found him guilty of the crime of assault with intent to murder, and sentenced him to imprisonment in the penitentiary for a term of one to five years. Max prosecutes this writ of error.

There is no substantial dispute as to the material facts. Both defendant and his wife had twice married others prior to their marriage in 1943. A defense worker, defendant earned $100 to $150 per week. After deductions for war bonds, he turned over more than half of his wages to his wife to defray expenses of their home in Blue Island. Their domestic life was turbulent. On the morning of October 19, 1944, following a dispute the previous evening, Elizabeth Max left defendant and went to the home of Mary and Frank Lund, her sister and brother-in-law, in Riverdale, four or five miles from Blue Island. Upon completion of his day's employment, defendant repaired to Lund's residence, arriving about 4:00 o'clock in the afternoon. He brought with him three quarts of beer. During the afternoon and evening he seemed moody and downhearted, staring into space, and once lapsed into a crying spell. Defendant pleaded persistently with his wife to return with him to Blue Island. Shortly after midnight she agreed. He then declared that if she did return to their home he would only make trouble for her, whereupon she revoked her consent, saying she would remain overnight with her sister. A little later, defendant drove his car to Blue Island to buy gasoline. Lund and his daughter, Loraine Lund Wilkins, made the trip, at defendant's request, Lund riding with defendant and Loraine Wilkins driving her father's automobile. At the gasoline station, defendant insisted that they accompany him to Blue Island to obtain something he desired Loraine Wilkins to present to his wife.

Defendant entered his residence alone. Reappearing, he handed to Loraine Wilkins an envelope containing twenty-three $25 United States war savings bonds, series E, payable to John J. Max or Elizabeth Max, and directed her to deliver the securities to his wife. Defendant told Loraine Wilkins that she would not see him again. He hurried back, alone, to Riverdale, reaching Lund's house about 2:00 o'clock A. M. According to the testimony, defendant was excited, "wild looking," and appeared to have been running. He again asked his wife to leave with him. Upon her refusal so to do, he announced he was going to take his own life, and flashed a 38-caliber Colt revolver. Elizabeth Max remonstrated with him, declaring he would be sorry, whereupon he turned the gun upon her, and, from a distance of three or four feet, shot her three times, —twice in the left arm and once behind the left ear. He then directed the weapon toward himself, firing two shots, the first penetrating his lip. The second bullet lodged in his jawbone, and was later removed. Hospitalization of about ten days for Elizabeth Max, and a little less than a week for defendant, followed.

Defendant, although admitting shooting his wife, testified that he did not remember any of the details of the occurrence. He stated that he did not recall delivering the bonds to Loraine Wilkins. He denied being drunk or that he had been drinking. The evidence discloses that after the shooting he was more solicitious of his wife's condition than of his own. He admitted ownership of the gun, stating it came into his possession in 1928, as a pledge which had never been redeemed. He added that he never carried the revolver, having no reason for so doing; that he did not remember placing it in his pocket, and that he could not recall when the weapon was last handled by him.

Defendant first challenges the sufficiency of the indictment, insisting that the common-law record fails affirmatively to show that the grand jury returning the indictment

against him was selected and summoned by the sheriff from the body of the citizens of the county, in compliance with sections 2 and 9 of an act concerning jurors. (Ill. Rev. Stat. 1943, chap. 78, pars. 2 and 9.) This contention with respect to the legality of the grand jury is not open to consideration where, as here, neither a motion to quash nor a challenge to the array was made. *People* v. *Hawkins,* 306 Ill. 29; *People* v. *Knox,* 302 Ill. 471.

Next, defendant urges that the evidence conclusively discloses his temporary insanity before and at the time of the shooting, rendering impossible existence of the intent required to commit the crime charged. This contention stems principally from the testimony that defendant appeared moody and downhearted on the day prior to the shooting, and that when he returned to Lund's house on October 20, 1944, at 2:00 o'clock A. M., he was "wild looking." Attention is directed to the character of his employment as "hammer man" on a machine, exerting 22,000 pounds pressure, used in forming airplane crankshafts. Inferentially, the statement is made that his employment subjected him to severe jars, asserted to be conducive to nervous tension. Defendant contends that this condition, together with his professed intense love for his wife, and her continued refusal to return, caused a temporary mental derangement sufficient to incapacitate him from forming the requisite criminal intent. The trial judge specifically found that defendant was sane, not only when he shot his wife but also on the day of the trial. His finding is amply supported by the record.

Finally, the contention is made that the evidence is insufficient to prove defendant's guilt beyond a reasonable doubt. From his admittedly liberal financial treatment of his wife, his announced intention, at the time of the shooting, to commit suicide, and his solicitude of her welfare both prior to and after the occurrence, defendant argues that his entire conduct was inconsistent with an intent on

314

his part to cause physical injury to her. Apart from the testimony of his wife, denied by the defendant, that on three or four previous occasions he had threatened her life, the evidence clearly discloses that defendant, either with malice aforethought or with a total disregard of human life, fired a revolver toward his wife. This is sufficient to constitute the crime of assault with intent to murder. *People* v. *Merritt,* 367 Ill. 521; *People* v. *Horan,* 360 Ill. 269; *People* v. *Wilson,* 342 Ill. 358.

The judgment of the criminal court of Cook county is affirmed.