(No. 30508)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THEODORE SIMMONS, Plaintiff in Error.

*Opinion filed March 18, 1948.*

ELLIS & WESTBROOKS, and EDWARD M. BYRD, both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, MELVIN S. REMBE, and W. S.

MIROSLAWSKI, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Plaintiff in error, Theodore Simmons, was convicted by a jury in the criminal court of Cook County of the crime of assault with a deadly weapon, with intent to kill one Wendell Yates, and was sentenced to the penitentiary for a term of not less than three nor more than seven years. He now prosecutes this writ of error contending that he acted in self-defense; that the evidence failed to prove his guilt beyond a reasonable doubt, and that the People failed to prove a specific and malicious intent.

The pertinent facts set forth in the record show that on March 8, 1947, about 1 o'clock in the morning, Yates and the plaintiff in error were among those present in a tavern located on East Forty-third Street in Chicago, Illinois. Although it is not clearly shown, it is apparent that there had been some previous difficulty between Yates and one Paul Linnear, who was also present. They became involved in a loud discussion and were asked to leave the premises. They went to the sidewalk in front of the tavern followed by William Linnear, Phillip Mitchell and plaintiff in error, the latter three all friends of Paul Linnear. These men testified that Yates was also accompanied by several friends, however, none of them were identified except one Nicholson, who, according to testimony introduced by the People, was not present when the altercation started in the tavern, but chanced upon the group when it retired to the sidewalk. The argument between Yates and Paul Linnear was continued on the sidewalk and all witnesses agree that there were no blows struck or physical violence exhibited until plaintiff in error fired his pistol, or immediately prior thereto. He admits firing the shots which struck both Yates and Nicholson, but contends that he acted in self-defense; that there was no specific

intent to murder, and that such intent cannot be presumed from the mere fact that a deadly weapon was used.

The three principals in the acts which led to the shooting are Yates, Nicholson and plaintiff in error. Yates, testifying for the People, stated that when the group arrived outside the tavern, he continued his discussion with Paul Linnear and was surrounded by Linnear's friends; that Nicholson approached the group and asked him (Yates) what the trouble was, whereupon plaintiff in error seized Nicholson around the neck with his left arm, drew a gun with his right hand and pressed it against Nicholson's head asking: "What have you got to do with it?" Yates stated that on seeing this he turned to run away and that as he did so plaintiff in error shot him once in the stomach at a distance of about six feet. He stated that after he was shot, he heard three more shots.

Nicholson's version of what occurred corroborated that of Yates, and he further stated that at the time plaintiff in error fired at Yates the latter was not approaching plaintiff in error but was turning away. He stated that neither he nor Yates had weapons in their hands and that immediately prior to the shooting no assault had been made on plaintiff in error by any person.

Plaintiff in error, testifying in his own behalf, acknowledged that he was a spectator to the argument between Yates and Linnear. He testified that he asked them not to fight and was asked by Yates: "What do you have to do with it?"; that when he replied "Nothing," Yates told him: "Well shut up or you will get some of this." He testified that when this occurred he grabbed hold of Nicholson, who had been standing behind Paul Linnear with his hands in his pockets, pressed his gun against Nicholson's head and said: "Won't you fellows go ahead now? Just forget the whole thing." He further stated that he then pushed Nicholson away from him and that as he did so Yates started at him with a knife, whereupon he shot

Yates when the latter was about three feet distant; that Nicholson then hit at him with a knife and he fired at Nicholson. He stated that Yates' knife was in his right hand, was open, and was about eight inches long. On cross-examination he stated he saw only the handle of the knife and that it was then half way out of Yates' pocket. He further stated on cross-examination that his purpose in drawing a gun was to frighten Nicholson and Yates away and to stop them from fighting. Nicholson testified in rebuttal that he had no knife; that Yates did not draw a knife or have his hands in his pocket as though he had a knife. Both he and Yates also denied plaintiff in error's version of the conversation.

One Chappell also appeared as a witness for the People and was able to testify only that he had heard the voices of the men arguing, and heard the shot but did not see who fired it. The People also placed one Jackson on the stand, who testified that when plaintiff in error placed his gun against Nicholson's head, Yates turned to plaintiff in error, drawing a knife as he did so, and asked what plaintiff in error had to do with the affair; that when Yates approached within three feet, plaintiff in error fired and shot Yates. When cross-examined by the People as a hostile witness, he stated that he had not before mentioned the presence of the knife in Yates' hand, because he had never been asked about it before. Herman Tarleton and Charles McGuire, the police officers who investigated the case, testified that neither plaintiff in error nor Jackson had at any time in the investigation stated that Yates was armed with a knife, or that he had assaulted plaintiff in error. Charles Joachim, another police officer, testified that he had taken plaintiff in error to the hospital where Yates identified him as the man who shot him.

In addition to the testimony of plaintiff in error related above, the defense introduced as its only other witness Phillip Mitchell, a patron of the tavern, who in his version

stated that plaintiff in error drew his gun and took hold of Yates, whereupon the witness walked away and saw nothing further.

William Linnear and Paul Linnear were called as witnesses by the court. William corroborated plaintiff in error's story that both Yates and Nicholson attacked plaintiff in error with knives, thus provoking the shooting. He stated that both Yates and Nicholson were standing facing plaintiff in error, and did not corroborate the testimony of the other witnesses that plaintiff in error had taken hold of Nicholson and placed a gun against his head. He testified that plaintiff in error drew his gun after Yates and Nicholson drew their knives. Paul testified that Yates had pulled a knife on plaintiff in error, but that he did not see Nicholson do so. He also stated that he had not mentioned the knives when questioned by the police because he had not been asked about them.

In rebuttal Yates testified that he had no weapon in his pocket or in his hand; that he did not draw a knife or assault plaintiff in error in any way. He further testified that Nicholson was not armed and made no attack on plaintiff in error. Another rebuttal witness, one Grant, testified that he saw Yates immediately after he was shot and that he had no knife in his pockets or in his hands.

The first error urged by plaintiff in error is that he was not proved guilty of the crime charged beyond a reasonable doubt. His position is, that he was acting in self-defense when he shot Yates and thus is not guilty of the crime of assault with intent to kill. We have detailed the testimony of witnesses for the People and for the defense at length, and it may be seen that their accounts of what transpired are irreconcilable. The rule is well known that the credibility of witnesses and weight of evidence are, in the first instance, questions best determined by the jurors, who are in a position to see and hear witnesses and to observe their behavior and demeanor on the witness stand.

It is for them to accept what testimony they believe, reject what they do not, and return a verdict accordingly. *People* v. *Buford,* 396 Ill. 158; *People* v. *Bote,* 379 Ill. 245; *People* v. *Costello,* 320 Ill. 79.

In criminal cases it is the duty of this court to review the evidence, and if there is not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. (*People* v. *Holt,* 398 Ill. 606; *People* v. *Kazmierczyk,* 357 Ill. 592.) This court, however, will not disturb the finding of the jury unless it can say that the finding does not meet the requirements of law. (*People* v. *Holt,* 398 Ill. 606; *People* v. *Anderson,* 375 Ill. 163.) From our examination of the evidence we are of the opinion that the jury was justified in finding that plaintiff in error was not acting in self-defense. The testimony of witnesses who stated that Yates and Nicholson were armed with knives and attacked plaintiff in error is confused and inconsistent, and is greatly weakened by the testimony of police officers to the effect that the alleged knife attack on plaintiff in error was not disclosed by previous investigation. It was conclusively shown that plaintiff in error fired the shot which struck Yates in the stomach. The decision of the jury, that he did not act in self-defense, will not be disturbed. This contention is without merit.

The next contention of plaintiff in error is that the evidence fails to prove a specific intent. It is argued that the period of time between plaintiff in error's act of withdrawing his gun from Nicholson's head and his shooting of Yates, was not a sufficient period in which he could form the specific intent necessary to constitute the crime of assault with intent to kill. He complains, too, that the People did not attempt to prove specific intent at the trial, but relied upon the inference from surrounding circumstances. A similar contention was made in the early case of *Weaver* v. *People,* 132 Ill. 536. This court said there,

at page 540: "The contention of counsel seems to be, that there must be some specific proof of the intent charged, and that it must be established in some way other than by evidence of the attending facts and circumstances. The specific intent alleged is an essential element in the offense charged in the indictment, and must, like any other fact necessary to constitute the crime, be proved beyond a reasonable doubt,—that is, when the whole case is considered, the jury must believe, beyond a reasonable doubt, that the assault was made with the intent alleged. It is not requisite or necessary, however, that the party charged should have brooded over the intent, or entertained it for any considerable time. It is sufficient if, at the instant of the assault, he intended to kill the party assaulted; or it will be enough if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice, and the assault is made under such circumstances that, if death had ensued, the killing would have been murder. Thus, when a person deliberately and wantonly shoots into a crowd of people, either with or without actual malice toward anyone there, and wounds one of the persons in the crowd against whom he had no actual malice, he will be held to be actuated by general malice, and to have intended the result of his unlawful and malicious act. Every sane man is presumed to intend all of the natural and probable consequences flowing from his own deliberate act. Therefore, if one voluntarily and willfully does an act the direct and natural tendency of which is to destroy another's life, the natural and irresistible conclusion, in the absence of qualifying facts, is, that the destruction of such other person's life was intended." This doctrine of presumed malice and intent has been consistently followed by this court where the facts justified its application. *People* v. *Max,* 391 Ill. 310; *People* v. *Merritt,* 367 Ill. 521; *People* v. *Horan,* 360 Ill. 269; *People* v. *Wilson,* 342 Ill. 358.

What was said in the *Weaver case* is equally applicable here. We have held that the jury in the instant case was justified in finding that plaintiff in error did not act in self-defense. In the absence of any other circumstances, we are of the opinion that it was also justified in finding that plaintiff in error's attack on Yates was malicious, that he intended the natural consequences of his wanton act, and was thus guilty of the crime of assault with intent to murder.

The judgment of the criminal court of Cook County was correct and is affirmed.

*Judgment affirmed.*