(No. 63322█)

THE PEOPLE *ex rel.* RICHARD M. DALEY, State's Attorney, Petitioner, v. EARL E. STRAYHORN, Judge, *et al.*, Respondents.

*Opinion filed March 23, 1988.*

CLARK, J., specially concurring.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Timothy W. Heath, Assistant State's Attorneys, of counsel), for the People.

Richard S. Kling, of Chicago, for respondent Hon. Earl E. Strayhorn.

James J. Doherty, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for respondent Manuel Zarco.

JUSTICE MILLER delivered the opinion of the court:

The respondent, Earl Strayhorn, a judge in the circuit court of Cook County, sentenced the defendant, Manuel Zarco, also a respondent in this proceeding, to 40 years' imprisonment for murder. Although the defendant had previously been convicted of second degree murder in Rhode Island for a different slaying, the respondent trial judge refused the prosecutor's request to hold a death penalty hearing on the current offense under section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1). The trial judge also refused to sentence the defendant to natural-life imprisonment pursuant to section 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1). This court granted the State's motion for leave to file a writ of *mandamus* and prohibition pursuant to our Rule 381 (107 Ill. 2d R. 381).

On August 31, 1980, the defendant, Manuel Zarco, stabbed and killed Ernesto Cabrera in Chicago. The defendant then went to Rhode Island where, on January 2, 1982, he murdered Clarence Robertson. After turning himself in to the police, the defendant was found guilty of second degree murder by a Rhode Island trial court for the January 2, 1982, slaying. The Rhode Island court sentenced the defendant to 40 years' imprisonment, but suspended 13 years of the term. The defendant was then extradited to Illinois.

Following a bench trial in the circuit court of Cook County on February 25, 1986, respondent Judge Strayhorn found the defendant guilty of the 1980 murder under section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1). The statute was subsequently amended by Public Act 84—1450, effective July 1, 1987. At the beginning of the sentencing hearing on March 20, 1986, the public defender tendered to the court a motion to preclude the imposition of the death penalty. The prosecutor explained to the court that he was seeking the death penalty because the defendant had also been convicted of murder in Rhode Island for a separate offense. The public defender responded that the Rhode Island statutory definition of murder significantly differed from that in Illinois' statutes and that the defendant was, therefore, not eligible for the death penalty. Without either side having an opportunity to address the significance of the sequence of the murder convictions, the trial judge denied the State's request for a death penalty hearing, stating that because of the order of the defendants' murder convictions, he believed the defendant was ineligible to be sentenced to death under Illinois' death penalty statute (Ill. Rev. Stat. 1985, ch. 38, par. 9—1). The trial judge explained that the Illinois murder preceded the Rhode Island murder and conviction, and had the defendant been tried first for the Illi-

nois murder, the defendant would not have been eligible for the death penalty. (See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(3).) Without considering whether other statutory aggravating factors (see Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)) existed to render the defendant eligible for the death penalty, and without calling the matter for a hearing on the death penalty at the State's request (see *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531), or distinguishing the stages of the sentencing proceeding (see Ill. Rev. Stat. 1985, ch. 38, par. 9—1(d)), the trial judge ordered the prosecution and defense to proceed to a hearing in aggravation and mitigation for a sentence other than the death penalty. The State did not object to the court's ruling on its request for a death penalty hearing, but proceeded with the sentencing hearing.

After permitting a Rhode Island detective to discuss certain facts of the Rhode Island murder, the trial judge sustained the defendant's attorney's objections, effectively curtailing any further testimony. The prosecution then offered into evidence a certified copy of the defendant's Rhode Island murder conviction, which the judge admitted. At the close of the hearing, the prosecution argued that section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c)) required the court to sentence the defendant to life imprisonment, because the Illinois conviction was the defendant's second murder conviction. Following the public defender's remarks concerning mitigating factors, the trial judge sentenced the defendant to 40 years' imprisonment.

On March 21, 1986, the day after the sentencing hearing, the parties again appeared before Judge Strayhorn, pursuant to the State's motion to reconsider the sentence imposed. The State argued that both Illinois case law and statutes provide that a person convicted of two murders must receive a sentence of either natural-

life imprisonment or death. The trial judge found the statutes and cases cited by the State inapplicable, because the defendant could not have been subjected to mandatory life imprisonment in Illinois had he been tried for the Illinois murder before he went to Rhode Island. The judge stated that under the circumstances presented, Illinois law did not require mandatory life imprisonment; if it did, the judge found, the statute was an unconstitutional trampling by the legislature on the prerogative of the judiciary. The judge then opined that regardless of whether section 5—8—1(a)(1)(c) mandated life imprisonment, he found mitigating that the Rhode Island murder conviction occurred after the Illinois murder, but before the murder conviction in Illinois. The trial judge declared that he would not sentence the defendant either to death or life imprisonment, and denied the State's motion to reconsider the original sentence. Subsequently, the State filed the present action for *mandamus* and prohibition, or for a supervisory order to compel Judge Strayhorn to vacate his orders of March 20 and 21, 1986, sentencing the defendant to 40 years' imprisonment and denying the State's motion to reconsider. In the alternative, the State seeks an order requiring Judge Strayhorn to clarify whether the Illinois sentence is to be served concurrent with, or consecutive to, the Rhode Island sentence.

The State first submits that section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(d)) imposes a nondiscretionary duty upon trial judges, following a murder conviction, to hold a death penalty hearing once the prosecution has requested the death penalty. The State contends that although the assistant State's Attorney informed the trial judge in the present cause that the State sought the death penalty, the judge failed to hold a death penalty hearing as required by section 9—1(d).

The defendant contends that the trial judge held a death penalty hearing and that remanding for a death penalty hearing would violate the Federal double jeopardy clause. Relying on *Arizona v. Rumsey* (1984), 467 U.S. 203, 81 L. Ed. 2d 164, 104 S. Ct. 2305, and *Bullington v. Missouri* (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852, the defendant argues that he was acquitted of the death penalty by the trial judge and that any further death penalty proceedings are barred by the double jeopardy clause.

In *Bullington*, a jury determined in a separate sentencing hearing that the defendant should receive life imprisonment rather than the death sentence, the only other sentence the defendant could have received under Missouri law. The Supreme Court held that the double jeopardy clause bars a death penalty hearing once a jury has acquitted the defendant of the death penalty in a trial-type sentencing hearing. In *Rumsey*, the trial judge conducted a capital sentencing proceeding similar to a trial in accord with Arizona law. The trial judge specifically found, after the completed hearing, that no aggravating or mitigating factors applied to the defendant, and therefore held the defendant ineligible for the death penalty. The Court held that a second death penalty sentencing hearing is barred once a defendant is acquitted of the death penalty after a completed trial-type sentencing hearing even though the sentencing judge found the defendant ineligible for the death penalty due to an erroneous interpretation of the death penalty statute.

The Court viewed the defendants' verdicts in *Rumsey* and *Bullington* as "acquittals" because the sentencing hearings in both of those cases "resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence." (*Bullington*, 451 U.S. at 438, 68 L. Ed. 2d at 279, 101 S. Ct. at 1858.) Both *Bullington* and *Rumsey* rest on the principle

that once a State, with all its resources and power, has received "one fair opportunity to offer whatever proof it could assemble," at a trial-type death penalty hearing, the double jeopardy clause prohibits it from placing a death-acquitted defendant in jeopardy of death again. *Bullington*, 451 U.S. at 446, 68 L. Ed. 2d at 283, 101 S. Ct. at 1862.

This court has previously recognized that the Illinois capital sentencing procedures share "many of the characteristics that the Supreme Court has found significant in applying principles of double jeopardy to those sentencing determinations." (*People v. Davis* (1986), 112 Ill. 2d 78, 81-82.) The facts of the present cause, however, differ substantially from those present in *Bullington* and *Rumsey*. In both of those cases, the sentencer rejected the death penalty after full hearings at which evidence and testimony was presented, and no statutory aggravating factors were found. The Supreme Court ruled, therefore, that the double jeopardy clause prohibits States from sentencing defendants to death at new sentencing proceedings following retrial after reversals of the original convictions. *Rumsey*, 467 U.S. at 209-10, 81 L. Ed. 2d at 170-71, 104 S. Ct. at 2309.

The interests which the double jeopardy clause seeks to protect are not implicated unless a defendant is put in jeopardy. (*Serfass v. United States* (1975), 420 U.S. 377, 43 L. Ed. 2d 265, 95 S. Ct. 1055; *People v. Shields* (1979), 76 Ill. 2d 543.) In nonjury trials, jeopardy attaches when the first witness is sworn and the court begins to hear evidence. (*People v. Shields* (1979), 76 Ill. 2d 543, 546-47; *Serfass v. United States* (1975), 420 U.S. 377, 43 L. Ed. 2d 265, 95 S. Ct. 1055.) The defendant must be " 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " *Serfass* (1975), 420 U.S. at 388, 43 L. Ed. 2d at 274, 95 S. Ct. at 1062, quoting

*United States v. Jorn* (1971), 400 U.S. 470, 479, 27 L. Ed. 2d 543, 553, 91 S. Ct. 547, 554.

*Bullington* and *Rumsey* are inapplicable to the present cause because the defendant was never placed in jeopardy. In the present action, the trial judge did not hold a capital sentencing proceeding in accord with the requirements of section 9—1(d). Our State's death penalty statute provides for a bifurcated sentencing hearing. The statute provides that when the State seeks the death penalty, "the court shall conduct a separate sentencing proceeding" to determine whether any of the aggravating factors set out in section 9—1(b) exist. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(d).) At this phase of the hearing, the State has the burden of proving the existence of any of the factors listed in subsection (b) beyond a reasonable doubt (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(f)) and "any information relevant to any of the factors set forth in subsection (b) may be presented by either the State or the defendant under the rules governing the admission of evidence at criminal trials" (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(e)). If the court or jury finds that one or more of the factors in subsection (b) exist, the court or jury moves to the second stage of the bifurcated hearing and considers any aggravating and mitigating factors which are relevant to the imposition of the death penalty. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(c).) If, on the other hand, the court or jury finds that none of the factors found in subsection (b) exist, the court "shall sentence the defendant to a term of imprisonment under Chapter V of the Unified Code of Corrections." Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(g), (h).

After the respondent Zarco was brought before the court on March 20, 1986, the defendant's attorney tendered to the court a post-trial motion and motion to preclude the imposition of the death penalty. Without stating that a death penalty sentencing hearing was to

proceed, the trial judge asked the defendant's attorney if she wished to state anything on the record. She briefly addressed the court, after which the trial judge denied the motion for a new trial and stated, "[Y]ou are also asking for the imposition of the death penalty?" After the State's Attorney stated, "[Y]es," the judge asked him, "[W]hy?" The State's Attorney replied that he was seeking the death penalty based upon a second murder conviction. Both the prosecutor and defense attorney then briefly discussed the Rhode Island murder and the defense attorney concluded by stating, "I submit for those reasons this is not a death case. Mr. Zarco should not have to go through a proceeding of a death hearing this morning with only a regular sentencing here, [*sic*] Judge." The State's Attorney then stated that he felt that the defendant was eligible for the death penalty. The trial judge then stated:

> "I am going to deny your petition to impose the death penalty on the basis the murder committed here in this jurisdiction preceded the murder that he was convicted of in Rhode Island."

Our review of the record reveals that in the present cause, the trial judge failed to hold the requested first phase of the statutory bifurcated capital sentencing hearing. Instead, the proceedings at issue more closely resemble preliminary proceedings often heard on motions before trials, which do not constitute jeopardy. (See *People v. Shields* (1979), 76 Ill. 2d 543.) The trial judge was acting in response to the defendant's motion to preclude the imposition of the death penalty and the prosecutor was responding to that motion. Although the State had the burden of establishing, beyond a reasonable doubt, the existence of an aggravating factor, the State was precluded from introducing a certified copy of the defendant's Rhode Island murder conviction, presenting the testimony of a Rhode Island police detective concern-

ing the defendant's murder conviction and arguing the law applicable to the sequence of convictions due to the trial judge's abrupt ruling. The State was permitted to introduce the conviction and present the detective's testimony only after the trial judge had decided to grant the defendant's request to preclude a capital sentencing hearing. It is clear that the State in this situation was not provided "one fair opportunity to offer whatever proof it could assemble" at a full-scale sentencing hearing. (*Bullington*, 451 U.S. at 446, 68 L. Ed. 2d at 283, 101 S. Ct. at 1862.) Because we believe that the first phase of a death penalty sentencing hearing was never conducted, we find that a capital sentencing hearing is not barred by double jeopardy.

Immediately after stating that the sequence of defendant's offenses and convictions precluded the death penalty, the trial judge instructed the parties to proceed to a hearing in aggravation and mitigation of sentence. The State, without objecting to the court's refusal to hold a capital sentencing hearing, acceded to the trial judge's direction and called its witness in aggravation. The following day, however, pursuant to the State's motion to reconsider the sentence imposed, the prosecution and defense again appeared before the trial judge. The State's motion alleged that the defendant was eligible for the death penalty, and requested the court to conduct a death penalty hearing. After a brief hearing, the judge denied the State's motion.

The respondents now contend that the State waived any right to a death penalty hearing by failing to object when the trial judge, without first conducting a capital sentencing hearing, directed the parties to proceed to a hearing on aggravation and mitigation of sentence; the respondents also argue that the State waived this issue by engaging in the sentencing hearing without request-

ing a continuance in which to seek *mandamus* or other relief.

The State did not waive its right to a hearing on the death sentence. Clearly, the State raised the issue of a capital sentencing proceeding in the trial court: the record shows that the prosecutor advised the trial judge at the outset of the sentencing hearing that the State would be seeking the death penalty. The prosecutor argued before the beginning of the sentencing hearing that the death penalty statute applied because of the defendant's two murder convictions. After the State had made known to the trial judge its intention to request the death penalty, the defense argued that the death penalty was inapplicable because of the dissimilarity between the Illinois and Rhode Island statutes. The trial judge ruled against the State and in favor of the defendant, denying the State a death penalty hearing on grounds not advanced by either the State or the defense.

The State did not waive its right to a death sentencing hearing by proceeding without further objection to the noncapital hearing on aggravation and mitigation. The State had requested a death penalty hearing and the State, as well as the defendant, had presented to the trial judge its views on the applicability of the death sentence. Further objection before proceeding with the sentencing hearing would have served no purpose. (*Cf. People v. Holloway* (1981), 86 Ill. 2d 78, 91-92.) Similarly, the State did not waive the issue by failing to seek immediately a continuance to petition for *mandamus* or other relief. One of the purposes of the waiver rule is to encourage parties to present all issues at a single trial so as to avoid piecemeal litigation. (*People v. McAdrian* (1972), 52 Ill. 2d 250, 253-54.) Requiring an interlocutory petition for relief would contradict this principle by promoting, rather than avoiding, piecemeal litigation. We

find that the State sufficiently preserved in the trial court its right to a capital sentencing hearing.

The respondents maintain that the equitable doctrine of *laches* precludes the State from now requesting a death sentence hearing. Respondents argue that by waiting until after the trial judge sentenced the defendant to 40 years' imprisonment rather than a natural-life term, the State unreasonably delayed in seeking relief from the judge's denial of a death penalty hearing.

*Laches* is an equitable principle which bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party. (See *Finley v. Finley* (1980), 81 Ill. 2d 317.) Here, the State argued in support of a death penalty hearing, which was denied. The State promptly filed a motion for reconsideration of sentence, and the motion was heard the day following the original sentencing. Seventeen days after the trial judge denied the motion for reconsideration the State filed in this court a petition for *mandamus* and supervisory relief. Rather than delaying, the State acted promptly in attempting to correct the trial judge's error. The doctrine of *laches*, therefore, does not preclude the State's right to relief.

The respondents next assert that the imposition of the death penalty on the defendant would be arbitrary and capricious and would also violate the respondent Zarco's Federal and State due process rights. Both arguments rest upon the nonsequential order of the defendant's acts and convictions. The defendant murdered Ernesto Cabrera in Illinois in 1980, and subsequently fled to Rhode Island, where he committed another murder in 1982. He was apprehended, and in 1984 was convicted in Rhode Island of the 1982 murder. The defendant was then extradited to Illinois and was found guilty in 1986 of the 1980 Chicago murder.

The respondents argue that to impose the death penalty would violate the defendant's due process rights because if the defendant had been tried in Illinois for the first murder, before his Rhode Island conviction, he would be ineligible to receive the death penalty in Illinois. The respondents contend that the defendant's death penalty eligibility for the Illinois murder cannot be based on conduct which occurred after the Illinois murder was committed.

This court considered a similar argument in *People v. Guest* (1986), 115 Ill. 2d 72. The defendant in *Guest* committed a murder in Illinois, then went to California, where he committed another murder. The defendant was apprehended, tried and convicted of the California murder. Following his return to Illinois, the defendant was convicted of the murder he had committed in this State, and sentenced to death under section 9—1(b)(3). The defendant argued that imposition of the death penalty was unconstitutionally arbitrary because the California conviction upon which his eligibility depended involved a killing which occurred after, not before, the killing in Illinois. This court rejected that argument, quoting from an earlier decision construing section 9—1(b)(3) which stated that " '[t]he statute [Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)(3)] speaks in terms of prior convictions, not prior offenses, leaving no room for judicial interpretation.' " (*Guest*, 115 Ill. 2d at 105, quoting *People v. Albanese* (1984), 104 Ill. 2d 504, 533-34.) The court in *Guest* further noted that "it is the sequence of convictions, not the sequence of conduct, which determines whether or not the multiple-murder, aggravating-factor provision applies in a given case." (*Guest*, 115 Ill. 2d at 105.) In light of our holding in *Guest*, we find that the statute does not violate the defendant's due process rights because of the order of his convictions.

The defendant also argues that he is ineligible for the death penalty under section 9—1(b)(3) because one of his convictions is from Rhode Island, which does not have a death penalty. Section 9—1(b)(3) requires substantial similarity between our murder statute (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and the murder statute of another State, not the penalties that may be imposed by the other State upon a conviction of murder. See *People v. Guest* (1986), 115 Ill. 2d 72, 100 (The "difference between Illinois and California in the manner of imposing the death penalty subsequent to conviction for murder is not relevant to deciding whether or not our multiple-murder, aggravating-factor provision applies").

The respondents allege that the Rhode Island murder statute under which the defendant was convicted (R.I. Gen. Laws §11—23—1 (1983)), is not substantially similar to section 9—1(a) of Illinois' Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)) and that the defendant is therefore not eligible for the death penalty in Illinois. For a murder conviction in another State to serve as an aggravating factor under Illinois' death penalty statute, the murder law of the other State must be substantially similar to section 9—1(a). (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(3).) The respondents claim that reckless conduct resulting in death may support a conviction of murder under Rhode Island law; the identical conduct and death, respondents argue, would comprise only involuntary manslaughter under Illinois law. A conviction of involuntary manslaughter would not implicate the multiple-murder aggravating factor of section 9—1(b)(3) of the Criminal Code of 1961. The respondents submit, therefore, that because of the differences between Illinois' and Rhode Island's laws, the defendant is not eligible for the death penalty in Illinois.

Our State's murder statute provides:

"Murder—Death penalties—Exceptions—Separate Hearings—Proof—Findings—Appellate procedures—Reversals.

(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

> (3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1.)

The Rhode Island murder statute provides:

> "The unlawful killing of a human being with malice aforethought is murder. Every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing, or committed in the perpetration of, or attempt to perpetrate any arson, *** rape, burglary or robbery, or while resisting arrest by, or under arrest of, any state trooper or policeman in the performance of his duty; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being *** is murder in the first degree. Any other murder is murder in the second degree." (R.I. Gen. Laws §11—23—1 (1983).)

An examination of the two statutes under the analysis of *People v. Guest* (1986), 115 Ill. 2d 72, reveals that the Rhode Island statute is substantially similar to our statute (Ill. Rev. Stat., 1987 Supp., ch. 38, par. 9—1(b)(3)).

In *People v. Guest* (1986), 115 Ill. 2d 72, this court concluded that California's murder statute, sections 187 through 189 of the California Penal Code, met the "substantial similarity" test of section 9—1(b)(3) of our Crimi-

nal Code (Ill. Rev. Stat., 1987 Supp., ch. 38, par. 9—1(b)(3)).

The court examined the opinions of California reviewing courts construing that State's murder statute and found that California's statute required a mental state for murder equivalent to that required in Illinois. The court rejected the argument that mere recklessness was a sufficient mental state for murder under either California or Illinois law. (*Guest*, 115 Ill. 2d at 98-103.) The court focused on whether both States shared the same *mens rea* requirements in order to support a murder conviction, looking at California court decisions as an aid in making that determination. The court noted that, "[t]hus, in California as in Illinois, the actor's knowledge of the probable consequences of particular conduct is critical in determining whether or not a killing is murder." (*Guest*, 115 Ill. 2d at 98.) The court held that California's murder statute was substantially similar to Illinois' for purposes of section 9—1(b)(3) of the Criminal Code. The definition and elements of murder in California closely parallel those for murder under Rhode Island's law.

Following the analysis set forth in *Guest*, we must determine whether the *mens rea* needed to support a murder conviction in Rhode Island is substantially similar to the Illinois definitions of "intent" and "knowledge" required in sections 9—1(a)(1) and (a)(2).

In *State v. McGranahan* (1980), 415 A.2d 1298, the Rhode Island Supreme Court declared that malice, either express or implied, is an essential element of both first and second degree murder in Rhode Island. Legal malice in Rhode Island arises "from either an express intent to kill or to inflict great bodily harm or from a hardness of the heart, cruelty, wickedness of disposition, recklessness of consequence, and a mind dispassionate of social duty." (*McGranahan*, 415 A.2d at 1302.) The court stated that

malice may be inferred from the circumstances surrounding a defendant's conduct; proof of a defendant's unjustified disregard for the possibility of death or great bodily harm and an extreme indifference to the sanctity of human life may establish malice. 415 A.2d at 1302.

In *State v. Iovino* (1987), 524 A.2d 556, the Rhode Island Supreme Court upheld the defendant's second degree murder conviction for firing into the walls and interior of a police station. A bystander at a counter in the police station was killed by the shots. The court stated that

"defendant's conduct in firing a volley of shots into a building that he had every reason to believe was occupied by human beings amounted to wanton recklessness. It has long been well settled in this and other jurisdictions that wanton recklessness can supply the element of malice that is necessary to raise homicide to the level of common-law murder." *Iovino*, 524 A.2d at 558.

*Iovino* makes clear that wanton recklessness in Rhode Island can only support a murder conviction when it rises to malice. (*Iovino*, 524 A.2d at 558.) Because the defendant in *Iovino* fired into a building that he had every reason to believe was occupied by human beings, the Rhode Island court held that his wanton recklessness rose to malice, and supported a murder conviction.

Malice, also a required element for conviction under Illinois' former murder statute, could be implied in Illinois under equivalent circumstances: "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." (Ill. Rev. Stat. 1959, ch. 38, par. 358.) Before the adoption of the Criminal Code of 1961, which established the present murder statute in Illinois (Ill. Rev. Stat. 1961, ch. 38, par. 9—1), this court, under previous statutes, upheld murder convictions based upon malicious and wanton recklessness. (See *Mayes v. People*

(1883), 106 Ill. 306; *People v. Jordan* (1960), 18 Ill. 2d 489; *People v. Johnson* (1954), 2 Ill. 2d 165; *People v. Simmons* (1948), 399 Ill. 572.) In enacting section 9—1(a)(2), the Illinois legislature intended to retain "the type of conduct which constitute[s] murder, as indicated by the Illinois cases," but without the use of the term "malice." (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments, at 17 (Smith-Hurd 1979); see *People v. Guest* (1986), 115 Ill. 2d 72, 96-97.) Section 9—1(a)(2) states that a defendant acts with knowledge when "[h]e knows that such acts create a strong probability of death or great bodily harm." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2).) As illustrated by *Iovino*, when wanton recklessness supplies "the element of malice that is necessary to raise homicide to the level of common-law murder," in Rhode Island, it is equivalent to section 9—1(a)(2) of our murder statute. Accordingly, we reject the respondent's assertion that mere recklessness which does not rise to either express or implied malice is sufficient to support a murder conviction in Rhode Island. We hold that section 11—23—1 of Rhode Island's General Laws is substantially similar to section 9—1 of the Illinois Criminal Code of 1961 for purposes of the multiple-murder aggravating factor in subsection 9—1(b)(3).

The State next asks, as an alternative to remanding for a death penalty hearing, that this court direct the respondent trial judge to impose a life sentence on respondent Zarco under the provisions of section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c)). We note that section 5—8—1(a)(1)(c) was amended by section 4 of Public Act 84—1450, effective July 1, 1987. That statute now provides for a sentence of natural-life imprisonment "if the defendant has previously been convicted of first degree murder under any state or federal law." (Ill. Rev. Stat., 1987 Supp., ch. 38, par. 1005—8—1(a)(1)(c).) Be-

cause we are directing the trial judge to hold a death penalty sentencing hearing, we do not consider here the State's alternative request that we direct the trial judge to impose a sentence of natural-life imprisonment. Because of our holding, we also need not address the State's request that Judge Strayhorn be required to clarify the sentence previously imposed by him upon the defendant by declaring that the sentence is to be served concurrently with or consecutively to the sentence imposed on the defendant in Rhode Island.

Finally, we consider the respondent Zarco's motion, which was taken with the case, to strike exhibit 2, a copy of the respondent Zarco's Rhode Island murder confession, from the petitioner's petition for writ of *mandamus*, and to strike references to the exhibit from petitioner's corrected suggestions in support of his petition and petitioner's brief. Because of the disposition of this case, we have had no occasion to consider or review the relevancy of the contested exhibit, and note that it has played no role in our consideration. We believe that because the offered exhibit was not a part of the record, the respondent's motion to strike should be allowed within the narrow perimeter of this case. Zarco's motion to strike the exhibit and references to the exhibit is therefore granted.

We conclude that the first phase of a death sentencing hearing was never held and that the trial judge in this cause was without a basis to refuse to hold such a hearing. As a hearing was never held, the respondent Zarco's double jeopardy rights will not be violated if a death penalty sentencing hearing is conducted. In *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, the court noted that a death penalty sentencing proceeding "cannot take place unless it is requested by the prosecutor, in which case it becomes mandatory." (77 Ill. 2d at 536.) The facts of the present cause, presented to the trial

judge after he had refused to hold a death penalty hearing, including a certified copy of the defendant's Rhode Island murder conviction, indicate that the judge was without a basis to deny the State's request to hold a death penalty sentencing hearing. For the reasons stated, *mandamus* shall issue and the respondent trial judge is directed to vacate the defendant's sentence of 40 years' imprisonment and hold a bifurcated death penalty hearing in accordance with section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(d)).

*Writ awarded.*

JUSTICE CLARK, specially concurring:

I concur only upon the basis of *stare decisis*. The wording of this statute is nearly identical to the wording of the California statute deemed substantially similar in *People v. Guest* (1986), 115 Ill. 2d 72. As I said at the time in my dissent in *Guest*, I am not convinced that "implied malice" murder, defined as "hardness of heart, cruelty, wickedness of disposition, recklessness of consequence, and a mind dispassionate of social duty," can be equated with knowing murder under our statute; and I further believe that the lack of a capital penalty for second degree murder under both statutes is also a significant difference. However, since my position has been rejected once, and since the Rhode Island and California statutes are essentially identical, I see no point in continuing to dissent on this issue. *Stare decisis* is not an absolute. Changing times and circumstances may convince us, in appropriate cases, to overrule past precedent. I cannot in good conscience, however, argue for the overruling of a case written in ink which is not yet dry. Since I cannot, I specially concur.