(No. 79923.-▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARK JOHNSON, Appellant.

*Opinion filed April 16, 1998.—Rehearing denied June 1, 1998.*

Charles M. Schiedel, Deputy Defender, and Theodore A. Gottfried, State Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers and Arleen Anderson, Assistant Attorneys General, of Chicago, and Renee Goldfarb and Michele I. Lavin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Mark Johnson, was convicted of two counts of first degree murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2)) and one count of armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2). Defendant waived a jury for sentencing. The trial court found that defendant was eligible for the death penalty because of a prior conviction for murder. Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(3). After a hearing in aggravation and mitigation, the trial court further determined that there were no mitigating factors sufficient to preclude imposition of a death sentence. Ill. Rev. Stat. 1989, ch. 38, par. 9—1(h). Accordingly, the trial court sentenced defendant to death. Defendant's death sentence has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a). For the reasons that follow, we affirm defendant's convictions and sentence.

## FACTS

The following pertinent evidence was presented at defendant's bench trial. The State presented evidence that fingerprints matching those of defendant were found in the apartment where the naked, bloody body of Cherry Wilson was discovered on May 8, 1984. The victim's body was found with her hands tied behind her back and her legs bound together at the ankles. Wilson's body had sustained numerous stab and cut wounds. The

State also presented evidence regarding defendant's confession to the murder of Cherry Wilson. Prior to trial, defendant's motion to suppress his confession was denied. Assistant State's Attorney Peter Vilkelis testified as to the written statement given by defendant on December 6, 1985. Prior to questioning defendant, Assistant State's Attorney Vilkelis advised defendant of his *Miranda* rights, which defendant indicated he understood. Defendant then gave a written statement and signed it. In that statement, defendant related meeting the victim and going to her house, where they drank and had sex. While in the bathroom, after having had sex with the victim, defendant decided to kill her. He found a butcher knife in the kitchen and, after tying her hands and feet, cut the victim's throat, breast, legs and stomach.

The State also presented the stipulated testimony of Dr. Robert Kirschner, an assistant medical examiner for Cook County. Dr. Kirschner would testify he performed an autopsy on the body of Cherry Wilson. Dr. Kirschner determined that the cause of death was "multiple slashing and incise wounds of the body."

The only evidence presented by the defense was the stipulated testimony of a records keeper of the Chicago public schools that she located and turned over to defense counsel defendant's grammar and high school records. Those records were admitted into evidence. The defense presented no other evidence after defendant chose not to testify and defendant indicated to the trial court that there were no additional witnesses that he wanted his attorney to call.

After considering the evidence, the trial court found defendant guilty of murder and armed violence. The State then requested a death penalty hearing. Defendant waived his right to a jury at sentencing for both the eligibility and aggravation/mitigation phases. At the

request of defense counsel, the trial court ordered a behavioral clinical examination of defendant to determine his capacity to waive a jury. The parties later stipulated that defendant had been examined by Dr. Stipes, a certified psychiatrist, who found defendant to be fit and competent. Defendant again expressed his desire to waive a jury at sentencing and executed a written jury waiver.

At the eligibility hearing, the State presented evidence of defendant's prior conviction for the murder of Willie Robinson and the conviction for murder in the instant case. The defense did not present any evidence. The trial court found defendant eligible for the death penalty on the ground that he had been convicted of two murders. Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(3).

At the second phase of the sentencing hearing, the State presented evidence regarding defendant's brutal murder of Willie Robinson and sexual assault of Cynthia Love in 1985. The State also presented evidence regarding defendant's sexual assault and beating of Shirley Randolph in 1985. Finally, the State presented defendant's conviction for a 1979 rape, for which he received a sentence of seven years' imprisonment.

In mitigation, the defense presented evidence of defendant's good behavior in jail. The defense also presented testimony from defendant's sister regarding abuse and lack of affection on the part of their mother toward defendant and his sister, and a stipulation that defendant's father was not present in the family home and provided no guidance or emotional support while defendant was a child. It was also stipulated that, while in the Department of Corrections, defendant had been examined by a psychiatrist who had recommended neurological consultations.

In rebuttal, the State presented a stipulation that Dr. Reifman, a certified psychiatrist with the Psychiat-

ric Institute of Cook County, had diagnosed defendant as suffering from an antisocial personality disorder. Dr. Reifman would also testify that defendant did not suffer from any mental disease or defect or extreme emotional disturbance at the time of the murder of Cherry Wilson.

After considering the evidence, the trial court found that there were no mitigating factors sufficient to preclude the imposition of the death sentence. The trial court therefore sentenced defendant to death.

Additional facts are discussed within the relevant portions of the analysis.

## ANALYSIS

### I. Trial Issue

#### Motion to Suppress Confession

Defendant raises only one issue regarding his trial. Defendant contends that the trial court erred in denying his motion to suppress his confession to police. Defendant argues that the police interfered with his opportunity to consult with counsel prior to custodial interrogation and thereby violated his rights under the United States and Illinois Constitutions. Given the importance of his confession to the State's case, defendant argues that the erroneous admission of the confession requires reversal of his conviction and a new trial. For the reasons that follow, we reject defendant's argument.

Prior to trial, defendant moved to suppress his inculpatory statements to the police. A hearing was held on defendant's motion at which the following evidence was presented. Defendant was taken into custody by Chicago police officers on December 5, 1985, when he was arrested in connection with the rape and beating of Shirley Randolph. While in police custody, defendant confessed to the detectives investigating the Randolph

case that he had committed a number of murders, including the murder of Willie Robinson on November 26, 1985. As a result, defendant was also charged with the murder of Robinson. The interrogating officers therefore placed "hold papers" on defendant which required that he be detained in the 11th District police station lockup for further investigation. On December 6, 1985, Chicago Police Detectives Thomas McCarthy and Michael O'Sullivan arrived at the 11th District lockup to question defendant about the murders he claimed to have committed. Upon arriving, the detectives were informed that the "hold papers" had been removed and defendant had been taken to Branch 66 of the circuit court of Cook County to appear before a judge in the Robinson and Randolph cases. The detectives proceeded to Branch 66 to locate defendant.

When Detectives McCarthy and O'Sullivan arrived at Branch 66, they located defendant in the lockup facility. Defendant was about to appear before a judge for a preliminary hearing or bond hearing on the Robinson and Randolph charges. Detective McCarthy testified that he "signed out" defendant and then removed him from the lockup. The detectives transported defendant to Area 4 police headquarters, where he was placed in an interview room. At that time, defendant had not been charged with the murder of Cherry Wilson. Detectives McCarthy and O'Sullivan testified that, prior to any questioning, defendant was advised of his constitutional rights pursuant to *Miranda*. Defendant indicated that he understood those rights and proceeded to make oral and written statements. Defendant never indicated to the detectives that he wished to have an attorney present. According to Detectives McCarthy and O'Sullivan, no one threatened or abused defendant.

Assistant State's Attorney Peter Vilkelis testified that on December 6, 1985, he conducted an interview

with defendant at Area 4. Defendant voluntarily gave statements after receiving *Miranda* warnings, which defendant indicated he understood. Defendant never stated that he wanted an attorney. Defendant also signed a written statement in which he confessed to the murder of Cherry Wilson. Before signing the written statement, defendant read that statement out loud in the presence of Vilkelis. Defendant never indicated to Vilkelis that he was threatened with physical harm or was forced to sign the statement.

Defendant also testified at the suppression hearing. Defendant testified that, while he waited in the Branch 66 lockup to go into court on the unrelated murder and rape charges, a sheriff's deputy asked everyone in the lockup whether they had attorneys. Defendant responded that he did not have an attorney but would like to speak to one, and the deputy informed him that counsel would be appointed when he appeared before the judge. Defendant was then placed in a line to appear before the judge. According to defendant, that line was in the hallway between the lockup and the courtroom. When Detectives McCarthy and O'Sullivan came to remove defendant from the line, defendant told the bailiff that he wanted to see the judge first. The bailiff, however, instructed him to go with the officers. Defendant further testified that when he was questioned by the detectives at Area 4, he requested to speak to an attorney. Defendant stated that, although the detectives never physically abused him, they told him that if he did not sign the statement they would kill him. He therefore signed the statement without knowing what was contained within it.

At the conclusion of the hearing, the trial court denied defendant's motion to suppress his confession. The trial court ruled that defendant's statement was admissible because defendant was advised of his

constitutional rights and he was not forced into giving the confession.

Defendant now argues that his confession should have been suppressed because it was obtained in violation of the constitutional principles expressed in *People v. McCauley*, 163 Ill. 2d 414 (1994). Initially, we note that defendant does not contend that either his fifth or his sixth amendment rights were violated by the police in this case. Rather, defendant's argument for suppressing his confession is premised solely on *McCauley*. We therefore address only whether our holding in *McCauley* requires suppression of defendant's confession in this case.

In *McCauley*, the defendant was brought to the police station for questioning in connection with a murder. The defendant was advised of his *Miranda* rights and did not request an attorney. However, unbeknownst to the defendant, his family had retained an attorney for him. The defendant's attorney went to the police station and requested to speak with the defendant. The police officers refused the defendant's attorney access to the defendant and also failed to inform the defendant that his attorney was present at the station and seeking to consult with him. The defendant subsequently gave a statement to the police in response to their questioning. The trial court granted the defendant's motion to suppress the statement.

This court affirmed the suppression of the defendant's statement on the ground that the conduct of the police violated the defendant's rights under the Illinois Constitution. After noting that the United States Supreme Court had rejected the contention that such conduct violated a defendant's right to counsel under the federal constitution, this court proceeded to consider whether this conduct violated the defendant's right to counsel under article I, section 10, of the Illinois Consti-

tution of 1970. This court concluded that the right to counsel under the Illinois Constitution should be construed more broadly than its federal counterpart. The court went on to hold that the conduct of the police in *McCauley* rendered the defendant's waiver of counsel invalid (Ill. Const. 1970, art. I, § 10). In reaching this conclusion, the court focused on the fact that the police refused the defendant's attorney access to the defendant during interrogation and did not inform the defendant that his attorney was present and seeking to consult with him. *McCauley*, 163 Ill. 2d at 445. In light of these circumstances, the court reasoned that the defendant was denied information necessary to "knowingly and intelligently waive his right to his attorney's presence as well as the actual and immediately available assistance of his own attorney." *McCauley*, 163 Ill. 2d at 446. Therefore, the police conduct violated the defendant's right to counsel under the Illinois Constitution (Ill. Const. 1970, art. I, § 10). *McCauley*, 163 Ill. 2d at 446.

This court also concluded that the defendant's statement to the police was obtained in violation of the defendant's due process rights under article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). The court held that due process under article I, section 2, is violated when the police interfere with a suspect's right to his attorney's assistance and presence by affirmatively preventing the suspect, exposed to interrogation, from receiving the immediately available assistance of an attorney hired or appointed to represent him. *McCauley*, 163 Ill. 2d at 444. Based upon the record, the *McCauley* court found that the actions of the police amounted to improper interference with the defendant's access to his attorney.

Relying on *McCauley*, defendant argues that the police in this case violated his right to due process of law and his right to counsel under the Illinois Constitution

because they prevented him from consulting with an attorney prior to interrogation. Defendant claims that he was on the "threshold" of counsel's presence and assistance when the police removed him from the courtroom, where he had been told that counsel would be appointed for him. Defendant views the actions of the police as a deliberate interference with his access to an attorney. In support of his claim, defendant relies on Detective McCarthy's admission at the suppression hearing that it would have been "no problem" to allow defendant to go before the judge at Branch 66 before taking him to Area 4, and his acknowledgement that it is easier to obtain a statement from a defendant who is not represented by counsel. Defendant therefore argues that the police detectives' conduct affirmatively prevented him from receiving the assistance of counsel and warrants suppression of his confession pursuant to the holding in *McCauley*.

Defendant's reliance on *McCauley* is misplaced. As noted above, the defendant in *McCauley* had a retained attorney who was being denied access to the defendant by the police. The police also failed to inform McCauley about his attorney's presence. Here, in contrast, no attorney had been retained or appointed for defendant. As such, there was no attorney being refused access to defendant by the police. Likewise, there was no information about such attorney that the police withheld from defendant. Consequently, the police neither interfered with defendant's access to a readily available attorney nor failed to inform defendant of an attempted contact by that attorney. This case is therefore distinguishable from *McCauley*.

Moreover, the police conduct here does not rise to the level of conduct criticized by this court in *McCauley*. In *McCauley*, we stated:

"Our State constitutional guarantees simply do not permit police to delude custodial suspects, exposed to interroga-

tion, into falsely believing they are without immediately available legal counsel and to also prevent that counsel from accessing and assisting their clients during the interrogation. (See Ill. Const. 1970, art. I, §§ 2, 10.) It is apparent that when police are allowed to withhold information from custodial suspects that their attorneys are present and immediately available to offer assistance, enormous pressure builds upon the police to secure statements from those suspects before they either exercise their right to an attorney or somehow learn of their attorneys' presence. Further, by preventing those attorneys from accessing and assisting their clients, police improperly interfere with the suspects' right to their attorneys' presence as well as the attorney-client relationship, itself. The incommunicado interrogation and surrounding coercive environment likely to result from this objectionable practice is exactly the sort of scenario previously condemned by the United States Supreme Court in *Escobedo* and *Miranda*. [Citations.]" *McCauley*, 163 Ill. 2d at 423-24.

It is evident from these remarks that the *McCauley* decision focused on deceitful acts by the police which prevented "immediately available" counsel from assisting a client during custodial interrogation. The record here does not demonstrate any deceitful conduct by the police detectives. See *People v. Kidd*, 178 Ill. 2d 92, 127-28 (1997) (refusing to suppress the defendant's confession pursuant to *McCauley* because the record did not show that defense counsel attempted to see the defendant before he made the inculpatory statements). Therefore, the police did not interfere with defendant's right to the assistance of counsel, as explained in *McCauley*.

Defendant also contends that suppression of his confession is warranted because his federal due process rights were violated by the police detectives' "egregious misconduct" in this case. See *Moran v. Burbine*, 475 U.S. 412, 432, 89 L. Ed. 2d 410, 428, 106 S. Ct. 1135, 1147 (1986) (the United States Supreme Court recognized that a defendant's federal due process rights may

be violated where police conduct is sufficiently egregious). As discussed above, the police detectives' conduct in this case does not rise to the level of "egregious misconduct." There is therefore no federal due process basis for suppressing defendant's confession.

In conclusion, we hold that defendant's constitutional rights to counsel and due process were not violated by the conduct of the police in obtaining his confession. After considering defendant's arguments, we find that he made a valid waiver of his right to counsel during custodial interrogation. A trial court's ruling on a motion to suppress evidence will not be disturbed on appeal unless it is manifestly erroneous. See *People v. Evans*, 125 Ill. 2d 50, 78 (1988). For the reasons stated herein, we find that the trial court was not manifestly erroneous in denying defendant's motion to suppress his confession.

## II. Sentencing Issues

### *Eligibility Phase*

Defendant contends that he was improperly and unconstitutionally found eligible for the death penalty. As noted, defendant's eligibility for the death penalty was predicated solely on the multiple-murder eligibility factor set forth in section 9—1(b)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(3)). The State sought to establish defendant's eligibility under section 9—1(b)(3) on the basis of defendant's prior conviction for the murder of Willie Robinson. Defendant contends that the Robinson murder conviction could not be used to establish his eligibility in this case. Defendant points out that the Wilson murder was committed on May 8, 1984, and the Robinson murder was committed on November 26, 1985. The State, however, chose to prosecute defendant for the Robinson murder first. As a result, defendant's conviction for the Robinson murder

preceded his conviction in this case, although the Robinson murder took place after the Wilson murder. Defendant submits that it was improper for the trial court to find him eligible for the death penalty based upon a murder that was committed after the instant murder.

This court has previously rejected this argument. Section 9—1(b)(3) provides, in pertinent part:

> "A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of first degree murder may be sentenced to death if the defendant has been convicted of murdering two or more individuals ***." Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(3).

This court has consistently interpreted the phrase "has been convicted" in section 9—1(b)(3) as meaning prior convictions, and not prior offenses. See *People v. Guest*, 115 Ill. 2d 72, 104-05 (1986); *People v. Albanese*, 104 Ill. 2d 504, 533-34 (1984). Therefore, the sequence of convictions and not the sequence of offenses determines whether the multiple-murder eligibility factor has been established in a given case. See *Guest*, 115 Ill. 2d at 105. Accordingly, so long as, at the time a defendant's eligibility is being determined, he has already been convicted of another murder, eligibility under section 9—1(b)(3) may be found.

We are not persuaded by defendant's arguments for reconsidering our holdings on this issue. Defendant first argues that, under the interpretation of section 9—1(b)(3) adopted in *Guest* and *Albanese*, a defendant's eligibility for the death penalty will depend solely upon the fortuitous circumstance of which of two murder cases was tried first, and thereby will be entirely unrelated to the nature of the offense or the individual character of a defendant. As such, defendant contends that this interpretation will result in an arbitrary and capricious imposition of the death penalty. This express argument has been rejected by this court. In *Guest*, 115 Ill. 2d at

104, the defendant raised a claim of arbitrariness against the multiple-murder eligibility factor. This court rejected that argument and held that the mere fact that a prior murder conviction was based on acts that occurred after the acts upon which the second murder conviction was based does not render the imposition of the death penalty under section 9—1(b)(3) arbitrary. *Guest*, 115 Ill. 2d at 105. This holding in *Guest* was reaffirmed in *People ex rel. Daley v. Strayhorn*, 121 Ill. 2d 470, 483 (1988). Defendant does not here advance any new or compelling reason that warrants this court altering its prior holdings on this matter.

Defendant further contends that this interpretation of section 9—1(b)(3) violates due process under the United States and Illinois Constitutions because it increases the possible sentence for a murder from imprisonment to death based upon conduct which occurs after the offense is completed. Defendant also argues that the *ex post facto* clause prohibits such a result. Defendant contends that the subsequent conduct of a defendant may not be used to retroactively increase the possible sentence for a prior unrelated offense.

These arguments have been considered and rejected by this court as well. In *People v. Coleman*, 168 Ill. 2d 509, 551 (1995), this court held that section 9—1(b)(3) does not violate due process simply because eligibility may be based on conduct occurring after the murder for which punishment is imposed. There, we reasoned that section 9—1(b)(3) places a defendant on notice that, after committing a murder, the commission of additional murders in Illinois or another jurisdiction would make him eligible for the death penalty. *Coleman*, 168 Ill. 2d at 550-51. We have also expressly rejected defendant's *ex post facto* argument. In *People v. Franklin*, 135 Ill. 2d 78, 107-08 (1990), this court held that this interpretation of section 9—1(b)(3) does not violate the state and

federal prohibitions against *ex post facto* laws. In *Franklin*, this court explained that section 9—1(b)(3) neither creates a new or independent criminal offense nor increases the punishment for the previously committed offense. *Franklin*, 135 Ill. 2d at 107. Instead, it dictates when an individual who has been found guilty of murder may be eligible to receive the death penalty as a result of a previous murder conviction. *Franklin*, 135 Ill. 2d at 107. In the instant case, when defendant committed the Cherry Wilson murder in 1984, he had fair warning that he would be eligible to receive the death penalty under section 9—1(b)(3) if he committed additional murders. Accordingly, the trial court's reliance on defendant's earlier conviction for the murder of Willie Robinson to support defendant's eligibility for the death penalty under section 9—1(b)(3) did not violate the state and federal prohibitions against *ex post facto* laws.

In a related argument, defendant contends that his eligibility for the death penalty was not properly established under section 9—1(b)(3) because his prior conviction for the Robinson murder is invalid and must be reversed. Defendant challenges the validity of his conviction for the Robinson murder on the basis that he was not afforded a fitness hearing. Defendant claims that the record shows that at the time of his trial and sentencing in the Robinson case, he was being administered the psychotropic drug Sinequan but was not afforded a fitness hearing. Because a fitness hearing was not provided in accordance with section 104—21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21(a) (West 1992)), defendant insists that pursuant to this court's decisions in *People v. Brandon*, 162 Ill. 2d 450 (1994), and *People v. Nitz*, 173 Ill. 2d 151 (1996), his conviction for the Robinson murder must be reversed.

Defendant's argument is unavailing. Essentially, de-

fendant asks us to reverse his conviction in the Robinson case. That conviction, however, is not presently before us. Defendant's conviction for murder and sentence of death in the Robinson case were upheld by this court on direct appeal. See *People v. Johnson*, 146 Ill. 2d 109 (1991). An appeal from the denial of a post-conviction. petition in that case is currently pending before this court. Because that appeal has not been considered by this court, it is pure speculation whether defendant's conviction for the Robinson murder will be reversed. We cannot, in this appeal, reverse defendant's conviction for the Robinson murder. Defendant's challenge to his eligibility based on the invalidity of the Robinson murder conviction is therefore rejected. Defendant raises no other challenge to his eligibility for the death penalty.

*Constitutionality of the Illinois Death Penalty Statute*

As a final matter, defendant raises several challenges to the constitutionality of the Illinois death penalty statute (Ill. Rev. Stat. 1989, ch. 38, par. 9—1). We hold that these challenges are without merit.

Defendant first argues that the death penalty statute in Illinois violates the eighth and fourteenth amendments (U.S. Const., amends. VIII, XIV) because it places a burden of proof on the defendant which precludes meaningful consideration of mitigating evidence. This argument has been previously considered and rejected by this court. See *People v. Munson*, 171 Ill. 2d 158, 204-05 (1996); *People v. Moore*, 171 Ill. 2d 74, 122 (1996). We adhere to our prior decisions and decline to reconsider this argument because defendant fails to set forth any persuasive reason to compel our reconsideration.

Next, defendant claims that our death penalty statute is unconstitutional for allowing the sentencer to weigh a vague aggravating factor, namely, "any other reason" a defendant should be sentenced to death. Prior

decisions of this court have addressed and rejected similar challenges to this nonstatutory aggravating factor on the basis of vagueness. See *Moore*, 171 Ill. 2d at 122-23; *People v. Taylor*, 166 Ill. 2d 414, 439 (1995). We likewise reject defendant's argument because defendant has not presented sufficient grounds for reconsideration.

Defendant also contends that the Illinois statute is unconstitutional because it does not sufficiently minimize the risk of arbitrarily and capriciously imposed death sentences. Defendant concedes that this court has determined that various features of the statute are individually constitutional. Nevertheless, he requests that we reconsider these features individually and also consider whether in their totality they render the statute unconstitutional. This issue has been repeatedly analyzed and rejected by this court. See *Munson*, 171 Ill. 2d at 205-06; *Taylor*, 166 Ill. 2d at 440; *People v. Johnson*, 149 Ill. 2d 118, 162-63 (1992); *People v. Phillips*, 127 Ill. 2d 499, 542-43 (1989). Again, defendant offers no reason that would warrant our reaching a different result in the present case. We therefore decline defendant's invitation to reconsider this issue.

Defendant therefore has not presented any compelling reason or authority to justify reversing our prior holdings on these issues. We thus continue to adhere to our prior decisions upholding the constitutionality of the Illinois death penalty statute.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. We direct the clerk of this court to enter an order setting Wednesday, September 16, 1998, as the date on which the sentence of death, entered by the circuit court of Cook County, shall be carried out. Defendant shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 1994). The clerk of this court shall send a certified copy of the

mandate in this case to the Director of Corrections, the warden of Stateville Correctional Center, and the warden of the institution where defendant is confined.

*Affirmed.*