Docket No. 84564–Agenda 9–January 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HECTOR NIEVES, Appellant.

Opinion filed July 6, 2000.

JUSTICE RATHJE delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Hector Nieves, was convicted of first degree murder (720 ILCS 5/9–1(a)(1) (West 1992)). The same jury found that defendant was eligible for the death penalty and that there were no mitigating factors sufficient to preclude the death penalty. Accordingly, the trial court sentenced defendant to death. Defendant’s execution has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d Rs. 603, 609(a).

On appeal, defendant argues that (1) he received the ineffective assistance of counsel when his attorney presented an invalid “mercy killing” defense; (2) he was improperly found eligible for the death penalty; (3) the trial court erred in allowing the State to introduce hearsay evidence at defendant’s sentencing hearing; (4) the trial court improperly denied defendant’s request to make a statement in allocution; and (5) the Illinois death penalty statute is unconstitutional. We will address each of these arguments, and the facts relating to them, in turn.

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he received the ineffective assistance of counsel when his trial attorney presented an invalid “mercy killing” defense.

Background

Defendant was indicted for the murder of Rafael Cuevas, a/k/a Pookie-Pookie. On May 10, 1992, the Chicago police found Cuevas’ body in an abandoned store front building at 2452 West North Avenue. Officer Ronald Ferrari of the Chicago police department’s mobile crime lab testified that he received an assignment to go to that location. Upon arriving, Ferrari observed Cuevas’ body lying on a bloodstained mattress. Ferrari testified that Cuevas had suffered severe trauma to the top of his head, a gash on his forehead, and bruises on his head and face. On a table near the body, Ferrari found a bottle cap, two burnt matches, hand wipes, and alcohol swabs. According to Ferrari, these items are commonly found where people are using crack cocaine. Ferrari did not find any money on Cuevas’ person.

Dr. Thamrong Chira performed the post-mortem examination. Chira found lacerations on the forehead, the right side of the head, and the face. Cuevas also had a large depressed skull fracture. Chira found that Cuevas’ brain was bruised and had hemorrhaged. According to Chira, Cuevas died of craniocerebral injuries; Cuevas had received at least six blows to his head. Chira found alcohol in Cuevas’ blood, but all tests for other drugs were negative. Cuevas tested positive for HIV.

John Muldoon, a former Cook County assistant State’s Attorney, testified that, on May 20, 1994, he was working as a trial supervisor in the felony review unit. On that day, he received an assignment to go to New York to interview a suspect who had surrendered to the police. Muldoon flew to New York with a court reporter, Cordelia Bussie. When they arrived, they met with another Chicago detective, Louis Rabbit, and two detectives from Brooklyn. They went to a police precinct in Manhattan, and Muldoon learned that he would be speaking to defendant.

Muldoon read defendant his 
Miranda
 rights, and Muldoon and Rabbit then interviewed defendant for approximately 20 minutes. The detectives asked defendant if he would make a statement to the court reporter, and he agreed. The court reporter transcribed the statement, and defendant signed it.

In the statement, defendant confesses to killing Cuevas. Defendant states that, on May 9, 1992, he was in an abandoned building at 2452 West North Avenue with Pookie-Pookie. Defendant had known Pookie-Pookie for approximately three months; defendant knew him “from the street.” At the time, defendant was living in the abandoned building.

On the date in question, at approximately 8 p.m., defendant was talking to Pookie-Pookie, and Pookie-Pookie said, “Man I tell you this shit you know. I want to die.” Defendant inquired as to what manner of “shit” Pookie-Pookie referred, and Pookie-Pookie responded, “Drugs and alcohol and things like that.” The conversation lasted about 10 minutes, after which Pookie-Pookie said he wanted to go to sleep. Defendant waited until Pookie-Pookie went to sleep, and then went outside for about 10 minutes.

Defendant returned with a 2 x 4 board so that he could kill Pookie-Pookie. When the detectives asked why defendant intended to kill Pookie-Pookie, defendant responded, “Because he said he wanted to die.” Defendant struck Pookie-Pookie several times in the head with the 2 x 4. He did not remember exactly how many times he hit him, but he believed it was more than 5 and fewer than 10. Defendant said that he threw the board away about 10 feet from Pookie-Pookie, inside the abandoned building. Referring to the board, defendant said, “The police never find it.” Defendant surrendered to the New York police two years later.

The State also presented the testimony of Cuevas’ sister, Blanca Nater. Nater testified that Cuevas lived in a house with three friends at North Avenue and Fairfield. Cuevas’ share of the rent was $55. Cuevas supported himself through public assistance and food stamps. Nater saw Cuevas on May 7, 1992, when she took him to pick up his public assistance check. The check was for $155, of which defendant used $55 to pay his rent. Nater spoke to Cuevas briefly on May 8. He did not seem depressed on either occasion, and Nater testified that he was always happy.

Nater testified that Cuevas was HIV positive and had a drinking problem. He was receiving treatment for HIV at St. Mary Hospital and St. Elizabeth Hospital. Nater said that Cuevas’ attitude was that he would have to deal with the HIV, and she never heard him say that he wanted to die because of it. Cuevas and Nater had made plans to go to their mother’s house on May 10 to celebrate Mother’s Day. On cross-examination, Nater indicated that she was aware that Cuevas had been treated for depression, but she still insisted that he was happy all the time.

At the close of the prosecution’s case, the defense attorney stated that he planned to call two witnesses: Chicago Police Detective Louis Rabbit and the keeper of records from St. Elizabeth Hospital. As to the keeper of records, the defense attorney stated that the person would testify about Cuevas’ suicidal ideations, which the defense attorney stated were relevant to his defense that Cuevas wanted to die. The attorney further explained that he would be seeking a second degree murder instruction. The trial court informed the defense that the keeper of records would not be allowed to testify because that testimony was irrelevant. The court further explained that it would not be giving a second degree murder instruction.

The defense called Rabbit as its only witness. Rabbit testified about defendant’s statements immediately preceding his statement to the court reporter. Defendant said that he wanted to tell what had happened. He said that Pookie-Pookie was one of his “street friends” and that he killed Pookie-Pookie because Pookie-Pookie wanted to die. According to defendant, Pookie-Pookie frequently complained that he wanted to die.

At the instruction conference, the court denied the defense request that the jury be instructed on second degree murder. In his closing argument, the defense attorney argued that the jury should find defendant not guilty because the killing was a mercy killing and that defendant was merely helping his friend who wanted to die.

Analysis

On appeal, defendant contends that he received the ineffective assistance of counsel when his attorney presented an invalid “mercy killing” defense. Defendant argues that “mercy killing” is not a defense to first degree murder and that his attorney improperly conceded his guilt to the jury. Although pursuing an invalid defense may be proper strategy when the defendant consents to the strategy, defendant argues that the record here does not show his consent.

A defendant raising an ineffective assistance of counsel claim must meet the two-part test of 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel’s performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance so prejudiced the defendant as to deny him a fair trial. 
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. To meet the second prong of the test, a defendant must demonstrate “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In certain situations when a defendant argues that he received the ineffective assistance of counsel because his attorney conceded guilt, prejudice will be presumed. See, 
e.g.
, 
People v. Hattery
, 109 Ill. 2d 449, 464-65 (1985). That standard, however, applies only when defense counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing. 
United States v. Cronic
, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984);
 People v. Johnson
, 128 Ill. 2d 253, 269-70 (1989);
 Hattery
, 109 Ill. 2d at 464-65. In 
Hattery
, for instance, the defense attorney told the jurors in his opening statement that they would find the defendant guilty and eligible for the death penalty and that the only question was whether the defendant should receive the death penalty. The attorney did not present any evidence and did not advance a theory of defense. This court held that, in that situation, prejudice would be presumed, and the defendant did not have to meet the 
Strickland
 standard. 
Hattery
, 109 Ill. 2d at 461-64. In this case, by contrast, defendant concedes, and we agree, that 
Strickland
 supplies the proper standard. The defense attorney extensively cross-examined State witnesses, called a witness in support of his theory of defense, and forcefully argued that defendant should be found “not guilty.”

The primary case relied upon by defendant is 
People v. Chandler
, 129 Ill. 2d 233 (1989). In 
Chandler
, the defendant was charged with murder, residential burglary, and aggravated arson. The evidence showed that two persons broke into the victim’s house, stole several items, stabbed the victim, and then set the house on fire. The defendant confessed to being involved in the crime, but asserted that a codefendant killed the victim. The State argued that defendant was guilty of murder, either as a principal or as an accomplice. The defense presented no witnesses, although the defense attorney promised the jury in his opening statement that the defendant would testify. In both opening and closing statements, the defendant’s attorney conceded that defendant was involved in the crime, but denied that defendant was guilty of murder. Under the law of felony murder and accountability, however, the concessions by the defendant’s attorney amounted to a concession of guilt. This court applied the 
Strickland
 test and found that the defendant received the ineffective assistance of counsel. 
Chandler
, 129 Ill. 2d at 237-50.

Since 
Chandler
 was issued, this court has revisited this issue several times. In 
People v. Ganus
, 148 Ill. 2d 466 (1992), the defendant was charged with murder. The evidence against defendant included his own detailed confession. The defendant’s attorney, through cross-examination of the State’s witnesses, attempted to establish the affirmative defense of compulsion, although compulsion is not a defense to first degree murder. This court found that defendant could not establish either prong of the 
Strickland
 test. In rejecting defendant’s claim, this court stated:

“What the instant case presents is a situation where the defendant literally had no defense. Evidence of his guilt was overwhelming. His counsel conceived a compulsion defense which, though not a legal defense, could or might have persuaded a jury not to convict. Jury nullification is always a possibility. It is not inconceivable that a compulsion defense might have evoked empathy, compassion or understanding and sympathy in the minds of the jurors. It is a truism that if a man is drowning, he will grasp at a straw that comes floating by. A weak or insufficient defense does not indicate ineffectiveness of counsel in a case where a defendant has no defense. In this case it would appear that defense counsel used his imagination and resourcefulness to come up with something where he had nothing to go on.” 
Ganus
, 148 Ill. 2d at 473-74.

In 
People v. Page
, 155 Ill. 2d 232 (1993), the defendant was charged with murder, robbery, and home invasion. The evidence against the defendant included his admission to stabbing the victim in the chest four times. In opening statement at the guilt phase of the trial, the defendant’s attorney told the jury that the defendant committed the homicide but was guilty of voluntary manslaughter rather than murder. At the end of the guilt phase of the trial, the judge denied the defense request for a voluntary manslaughter instruction and told the defendant’s attorney not to argue that theory to the jury. The defense attorney instead argued that the defendant did not intend to kill the victim. 
Page
, 155 Ill. 2d at 260. On appeal, the defendant argued that his counsel was ineffective for relying on theories that were not supported by the evidence. This court rejected the defendant’s ineffective assistance of counsel argument. The 
Page
 court noted that there was little evidence to support the voluntary manslaughter defense, but held that, in light of the overwhelming evidence of defendant’s participation in the killing, the defense attorney might reasonably have believed voluntary manslaughter to be the only reasonable course of defense. 
Page
, 155 Ill. 2d at 262. Further, this court held that, with respect to the defendant’s attorney switching to the argument that the defendant did not intend to kill the victim, the defendant could not meet the prejudice prong of the 
Strickland
 test in light of the overwhelming evidence against the defendant. 
Page
, 155 Ill. 2d at 266-67.

In 
People v. Shatner
, 174 Ill. 2d 133 (1996), the defendant was charged with first degree murder, armed robbery, and arson. The defendant gave a statement in which he admitted his involvement in the robbery, but placed the blame for the murder and the arson on another participant in the crime. In his closing argument, the defendant’s attorney stated that the defendant’s statement was the correct version of the crime and that “if he’s guilty of anything, he’s guilty of robbery.” 
Shatner
, 174 Ill. 2d at 147.

On appeal, the defendant argued that his attorney was ineffective because his concession to the defendant’s participation in the robbery inevitably conceded the defendant’s guilt of felony murder. This court rejected the defendant’s argument, finding that the defendant could not meet the 
Strickland
 test.
 Shatner
 first explained the holding in 
Chandler
, noting that the finding of ineffectiveness of counsel did not rest exclusively on Chandler’s counsel’s alleged failure to develop a theory of innocence. Instead, 
Chandler
 also relied on the defense counsel’s cursory cross-examination of some witnesses, the failure to cross-examine others, and his calling no witnesses to testify even though he stated in his opening argument that the defendant would testify. 
Shatner
, 174 Ill. 2d at 147.

By contrast, the defense attorney in 
Shatner
 aggressively cross-examined nearly every witness and called several witnesses on the defendant’s behalf. This court stated that it was the defendant’s own statements that undermined any claim of innocence that he may have had. 
Shatner
 explained that, although the defense’s strategy of hoping the jury would convict the defendant of only robbery was a risky one, it was perhaps the only strategy that could have been seriously pursued given the defendant’s incriminating statements and the overwhelming evidence of his guilt. Further, this court stated that:

“If a defendant enters a not-guilty plea in the face of overwhelming evidence of his guilt, we are unwilling to find that his counsel was ineffective simply because he failed to contrive a leak-proof theory of innocence on defendant’s behalf. To do so would effectively require defense attorneys to engage in fabrication or subterfuge.” 
Shatner
, 174 Ill. 2d at 148.

Turning to the present case, and keeping the above authorities in mind, we cannot find that defendant received the ineffective assistance of counsel. Defendant cannot meet either prong of the 
Strickland
 test. Defendant’s attorney hoped to convince the court to instruct the jury on second degree murder. The basis for the attorney’s argument was that the “sudden and intense passion resulting from serious provocation by the individual killed” (720 ILCS 5/9–2(a)(1) (West 1998)) required for a finding of second degree murder did not necessarily have to be viewed in terms of anger and violence. The attorney’s position was that the “sudden and intense passion” could be viewed in terms of sympathy and the desire to help a friend. While this is a dubious proposition at best (see 
People v. Fausz
, 95 Ill. 2d 535, 539 (1983) (only recognized categories of serious provocation are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender’s spouse), the defendant had confessed to the crime, and his attorney was trying to come up with something where his client had no defense. See 
Ganus
, 148 Ill. 2d at 474. Further, defendant’s attorney thoroughly cross-examined the State’s witnesses, presented a witness in support of his defense, and vigorously argued that the defendant should be found “not guilty.”

Moreover, we cannot find that a reasonable probability exists that, had counsel not pursued the invalid mercy killing strategy, defendant would have been acquitted. The evidence against defendant was overwhelming. Defendant gave a detailed confession to the crime, and the physical evidence corroborated his account of the crime.

The defendant next argues that this choice of defenses was not proper because he had a legitimate reasonable doubt defense because, although he told the police that he threw the murder weapon away approximately 10 feet from the body, the police never found it. We note that, when the police searched the building, they did not know that a board was the murder weapon. Defendant did not confess until two years after the crime. Defendant has not persuaded us that the police’s failure to find a particular board in an abandoned building raises sufficient doubt of his guilt that, had he made that argument instead of the mercy killing one, a reasonable probability exists that he would have been acquitted.

Defendant further argues that his failure to consent on the record to the invalid mercy killing defense requires reversal of his conviction. Our response to this assertion is twofold. First, in 
Hattery
, we stated that a defense attorney “may not concede his client’s guilt in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered, unless the record adequately shows that defendant knowingly and intelligently consented to his counsel’s strategy.” 
Hattery
, 109 Ill. 2d at 465. Defendant’s attorney in this case did not concede guilt in the hope of obtaining a more lenient sentence. He argued that his client should be found not guilty. Second, we explained in a subsequent case that 
Hattery
 did not hold that it is 
per se
 ineffectiveness whenever the defense attorney concedes his client’s guilt in the face of overwhelming evidence and the defendant’s consent does not appear in the record. Rather, a defendant must still meet the 
Strickland
 test unless the case involves a complete failure to subject the State’s case to meaningful adversarial testing. 
Johnson
, 128 Ill. 2d at 268-270. As we held above, defendant cannot meet that test.

Finally, defendant argues that the mercy killing strategy defense was invalid because defendant did not reargue that theory as a mitigating factor against the death penalty. Defendant appears to read 
Ganus
 as establishing a 
per se
 rule that, when an attorney argues an invalid defense, the strategy must be to either argue for jury nullification or to reargue the invalid theory as a mitigating factor at sentencing. 
Ganus
 establishes no such rule. The holding in 
Ganus
 was merely that, on the facts of that case, the defendant did not establish that he received the ineffective assistance of counsel and that he could not meet either prong of the 
Strickland
 test. Likewise, defendant cannot meet either prong of the 
Strickland
 test. Further, although defendant is correct that his attorney did not specifically reargue the mercy killing theory at the aggravation/mitigation phase, he fully developed that theory at trial, and the jury was instructed that it could consider the evidence at trial in mitigation. The sentencing jury also received the instruction that a mitigating factor that can be considered is that “the murdered individual was a participant in the defendant’s homicidal conduct or consented to the homicidal act.” 720 ILCS 5/9–1(c)(3) (West 1998).

In sum, we cannot find that the defendant received the ineffective assistance of counsel. Defendant has shown neither that his attorney’s performance fell below an objective standard of reasonableness nor that a reasonable probability exists that, had his attorney pursued another line of defense, the result of the proceeding would have been different.

ELIGIBILITY FOR THE DEATH PENALTY

Defendant next argues that he was improperly found eligible for the death penalty based on the aggravating factor that he was convicted of two or more murders (720 ILCS 5/9–1(b)(3) (West 1998)). The second conviction relied on by the State to establish defendant’s death eligibility was defendant’s conviction for the first degree murder of Louis Vargas. Defendant killed Vargas on September 13, 1992, and was convicted of the crime in June 1997.

According to defendant, although he was 
convicted
 of the Vargas murder first, the crime itself occurred after Cuevas’ murder. Defendant contends that it was improper to find him eligible for the death penalty based solely upon a subsequent crime, even though the latter was tried first. We disagree.

Defendant’s rationale for this argument is that, to allow a defendant to be eligible for the death penalty based upon a subsequent homicide would result in an arbitrary and capricious imposition of the death penalty. According to defendant, a particular defendant’s eligibility for the death penalty would depend solely on the fortuitous circumstance of which of the two cases was tried first and would be unrelated to the nature of the offense or the individual character of the defendant.

This court has repeatedly held that the sequence of convictions and not the sequence of offenses determines whether the multiple- murder eligibility factor has been established in a particular case. See, 
e.g.
, 
People v. Johnson
, 182 Ill. 2d 96, 109 (1998); 
People ex rel. Daley v. Strayhorn
, 121 Ill. 2d 470, 483 (1988); 
People v. Guest
, 115 Ill. 2d 72, 105 (1986); 
People v. Albanese
, 104 Ill. 2d 504, 533-34 (1984). In 
Johnson
, 
Strayhorn
, and 
Guest
, we rejected the precise argument that defendant raises here. Defendant has not offered any compelling reasons for us to revisit the holdings of these cases, and we thus decline to do so.

HEARSAY EVIDENCE AT THE SENTENCING HEARING

Defendant next argues that he was denied his constitutional right to a fair death penalty sentencing hearing when the prosecutor was allowed to introduce hearsay evidence in the form of defendant’s Department of Corrections master file. Jim Utley, who worked in the records office of the Department of Corrections, testified as to the contents of this file. Defendant, however, failed to object when this evidence was introduced. Consequently, this issue is waived. See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).

Defendant asks us to relax the waiver rule and review the issue as plain error. Under Supreme Court Rule 615(a), we will review plain errors affecting substantial rights, even if those errors were not objected to during trial or raised in the post-trial motion. See 134 Ill. 2d R. 615(a). We will invoke the plain error rule in two limited circumstances: (1) where the evidence is closely balanced; or (2) when the errors are of such magnitude that defendant was denied a fair and impartial trial and remedying the error is necessary to preserve the integrity of the judicial process. 
People v. Vargas
, 174 Ill. 2d 355, 363 (1996).

Defendant’s plain error argument consists of a single sentence asking us to employ the plain error rule because the right to a fair death penalty sentencing hearing is a fundamental right. The balance of his argument consists of explaining why the admission of the evidence was error, not plain error. He neither argues that the evidence was closely balanced nor explains why the error is so severe that it must be remedied to preserve the integrity of the judicial process. Accordingly, we find the argument waived. See 177 Ill. 2d Rs. 341(e)(7), 612(i).

Defendant also raises this issue as an ineffective assistance of counsel claim, arguing that defense counsel was ineffective for failing to object to the admission of the report. This argument consists of that single statement and a citation to 
Strickland
. Defendant explains neither how his attorney’s actions fell below an objective standard of reasonableness nor how a reasonable probability exists that, but for counsel’s errors, the result of the proceeding would have been different. 
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Accordingly, we find the argument waived. See 177 Ill. 2d Rs. 341(e)(7), 612(i); 
People v. Sanchez
, 169 Ill. 2d 472, 499-500 (1996).

ALLOCUTION

Defendant next contends that his due process rights were denied when the trial court denied his request to make a statement in allocution. Defendant concedes, however, that this court has consistently held that defendants have neither a statutory nor a constitutional right to make a statement in allocution in capital sentencing hearings. See 
People v. Brown
, 185 Ill. 2d 229, 259 (1998) (and cases cited therein). Defendant asks us to revisit the holdings of those cases, but offers no persuasive reason why we should do so. Accordingly, we decline defendant’s request to reconsider our previous holdings on this issue and hold that the trial court did not err in denying defendant’s request.

CONSTITUTIONALITY OF THE ILLINOIS DEATH PENALTY STATUTE

Finally, defendant raises several constitutional challenges to the Illinois death penalty statute. Defendant argues the statute is unconstitutional because (1) innocent people will inevitably be executed; (2) the statute places a burden of proof on the defendant that precludes meaningful consideration of mitigating evidence and allows the sentencer to weigh a vague aggravating factor; and (3) the statute fails to minimize sufficiently the risk of arbitrarily or capriciously imposed death sentences. This court has considered and rejected each of these claims. See, 
e.g.
, 
People v. Bull
, 185 Ill. 2d 179, 211-20 (1998); 
People v. Brown
, 185 Ill. 2d 229, 260-61 (1998);
 People v. Nielson
, 187 Ill. 2d 271, 300 (1999). Defendant has not provided us with any persuasive reasons to revisit these holdings.

CONCLUSION

The judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, November 28, 2000, as the date on which the sentence of death entered in the circuit court is to be imposed. Defendant shall be executed in the manner provided by law (725 ILCS 5/119–5 (West 1998)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Tamms Correctional Center, and the warden of the institution where defendant is now confined.

Judgment affirmed
.

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that Nieves’ murder conviction should not be disturbed. In my view, however, his sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998)
, the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). Nieves’ sentence of death should therefore be vacated and he should be sentenced to a term of imprisonment. 720 ILCS 5/9–1(j) (West 1992). Because Nieves has previously been convicted of first degree murder, the term of his imprisonment must be natural life. 730 ILCS 5/5–8–1(a)(1)(c)(i) (West 1992).