**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190684-U

Order filed June 27, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0684 Circuit No. 19-CF-93 |
| | ) | |
| STEVEN REIS CAMPEN, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Hauptman and Schmidt concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err in denying defendant's motion for new trial or, in the alternative, judgment notwithstanding the verdict.

¶ 2     Defendant, Steven Reis Campen, appeals from his conviction for home invasion. Defendant contends that the Peoria County circuit court erred in denying his motion for new trial, or in the alternative, judgment notwithstanding the verdict (JNOV) where the State failed to present evidence sufficient to support a finding of guilt and the State's improper and prejudicial assertion in opening statements deprived defendant of a fair trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with two counts of home invasion. (720 ILCS 5/19-6(a)(2) (West 2018)). The charges stem from a February 13, 2019, incident where defendant was alleged to have entered the home of Amanda Boucher through a broken window and injured both Boucher and her son, Blaine Reichard. Defendant's case proceeded to a jury trial.

¶ 5          During opening statements, the State queried: "What is he going in there for? He's telling them he is acting as collection man. One of Tony Soprano's guys." Defendant did not object to this statement. After the State finished its opening statement, defendant moved for a mistrial on other grounds. The circuit court denied defendant's motion.

¶ 6          Boucher testified that she lived on Wiswall Street in Peoria on February 13, 2019, with her son Reichard, which she rented from Donnie Gibbs, Sr. At approximately 9:30 p.m., she was at home, asleep in her bedroom upstairs. She awoke to the sound of Reichard screaming. She heard him yell "why are you hitting me?" Boucher came downstairs and saw defendant standing in her living room striking Reichard. She began yelling at defendant and tried to intervene. Defendant followed Boucher into the kitchen and began striking and kicking her. He struck her head against the countertop. During that time, defendant was yelling "give me my uncle's fuckin' money. Tammy sent me to get my uncle's fuckin' money. Give me all the fuckin' money right now." Reichard pulled defendant off Boucher and defendant began to attack him again. Boucher called the police. She informed defendant "[t]he cops are on their way. You need to get the hell out." Defendant "shook" a door off its hinges and fled the residence. Boucher indicated that she was bleeding and described injuries to Reichard that she had observed. She observed the broken window and indicated that there were glass shards both inside and outside the residence, with the majority being inside. Boucher denied inviting defendant into her home.

¶ 7        Reichard testified substantially to the same events as Boucher. He added that while he was asleep in his bedroom, downstairs, he heard a window breaking. He observed defendant come through the window and take a metal object and break more glass out of the window. Reichard saw glass shards outside the residence the next morning.

¶ 8        Charles Walls testified that he lived next door to Boucher. On the night of the incident, he heard glass break. He attempted to look out his window but could not see anything. He stepped out his back door and looked across the privacy fence that separated the houses. The area was illuminated by a streetlight. He observed a figure's legs crawl into a window at the Boucher residence. Walls called the homeowner's son, Donnie Gibbs Jr. He did not call the police.

¶ 9        Officer Drew Flynn of the Peoria Police Department testified that he responded to the Boucher residence to investigate the incident. He photographed the scene and recorded damage to the door with his body camera. These photographs and body camera footage were admitted into evidence and included an image of the broken window which had glass shards on the windowsill and curtains out of place. Flynn testified that some broken glass had landed inside but the majority was outside.

¶ 10       At the close of the State's case, defendant made a motion for directed verdict which was denied. Defendant then testified that, on February 13, 2019, at approximately 9 p.m., he went to the residence on Wiswall Street because he had been told by Tammy Benner, his longtime friend and the girlfriend of homeowner, Gibbs, Sr., that there were issues around the house that needed to be repaired. He knocked on the door of Boucher's residence. Boucher answered and defendant followed her into the house. As he entered, defendant complained about visible garbage and the poor condition of the house and Boucher began screaming profanities at him. At this point, Reichard came out of the first-floor bedroom and struck defendant in the eye, causing bruising.

3

Defendant fought back after being struck and exchanged angry words with Boucher. The entire exchange lasted several minutes. Defendant exited through the front door. Defendant indicated that the window was intact when he entered the residence and that Reichard broke the window by either punching it or throwing something at it.

¶ 11    On cross-examination, defendant testified that he had one alcoholic beverage before going to Boucher's residence and was mostly sober at that point. Defendant admitted to abusing the medication, Klonopin. He indicated that after the incident, he took a large quantity of the medication. Defendant did not recall much of what happened after the incident, including the things he said and did during his transport to the jail that night, stating "I don't know nothing from there to the jail for the next two days. I don't remember."

¶ 12    Benner testified that she was in a relationship with Gibbs Sr. She had been friends with defendant for more than a decade. Benner indicated that she spoke with defendant on the night of the incident. He had inquired as to whether Gibbs Sr. had work for him to do at Boucher's residence. Benner did not know if any work was needed as Boucher had been avoiding their calls. Benner told defendant that Boucher owed money to Gibbs Sr. She went to repair the window the day after the incident. She observed glass on the window and outside the residence. She did not enter the residence.

¶ 13    On cross-examination, Benner explained that she only relayed that information to defendant because he was a friend, and she was conversing with him. She did not send defendant to Boucher's residence at 9:30 p.m. to do maintenance work, only to see if any maintenance work needed to be done.

¶ 14        Gibbs Sr. testified that he was the owner of the residence on Wiswall Street. Boucher rented it from him. He learned of the incident when Boucher called him that evening, shortly after the altercation. Gibbs Sr. indicated that his son, Gibbs Jr. would be fixing the window.

¶ 15        Gibbs Jr. testified that he received a call from Walls the evening of the incident regarding the breaking glass noise. Walls wanted to call the police, but Gibbs Jr. did not feel that was necessary as he "thought it would be handled." Gibbs Jr. went to the residence the day after the incident to inspect the damage to the window.

¶ 16        Officer Megan Rosenak testified for the State as a rebuttal witness. She transported defendant to the county jail in the early morning hours of February 14, 2019, approximately 5½ hours after the incident occurred. Defendant made several statements to Rosenak, stating that: (1) he had never been on Wiswall Street, (2) he did not know anyone on that street, and (3) he asked Rosenak to take him to Wiswall Street where he broke the window. Video and audio clips of those statements were admitted and published to the jury. Rosenak testified that defendant was intoxicated.

¶ 17        The jury returned a verdict of guilty on both counts of home invasion. Defendant filed a motion for a new trial, or in the alternative, JNOV. At the hearing, defendant argued that the facts did not support the State's evidence, specifically citing the location of the broken glass and lack of evidence to substantiate that defendant crawled through the broken window to enter the residence. Defendant made no argument regarding comments made during opening statements. When asked by the court how he accounted for the testimony of Walls, defendant replied that Walls's testimony about seeing legs crawling through the broken window was "the only thing that supports the victims in this case because the officer does not support that position at all". When rendering its decision on the motion, the court stated:

5

"I think the evidence is entirely the opposite. There was lots of questions asked about the glass and the window, but there wasn't a single answer that I recall that was favorable to the defendant other than there might have been some shards or something on the outside, but a lot of glass was on the inside.

It just seems so immaterial and irrelevant because the next-door neighbor said I heard a noise, a breaking of some type. *** and he sees two legs sticking out of a window that was on his side of the house and scurrying themselves into the place."

The court discussed the other evidence presented during the trial and found "no evidence of reliability that the defendant had been let into the door, or allowed in through the door, or even knocked at the door." The court further opined that defendant's fleeing from the scene was indicative of his guilt. Defendant's motion was denied. Defendant was sentenced to 26 years' imprisonment. Defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19        First, defendant argues that the circuit court erred in denying his motion for a new trial or, in the alternative, JNOV because the evidence was insufficient to support a guilty verdict. Specifically, defendant argues that the evidence showed that the broken glass was primarily outside the residence which refutes Boucher's testimony, and the court failed to consider evidence that defendant was let into the residence.

¶ 20        The circuit court's decision to grant a new trial is an exercise of discretion which should not be disturbed absent a clear abuse of that discretion. *People v. Abdullah*, 336 Ill. App. 3d 940, 949 (2002). An abuse of discretion occurs where the court's decision is arbitrary, fanciful, or unreasonable. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). "In determining whether the trial court

6

abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the [defendant] was denied a fair trial." *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992).

¶ 21     Defendant was charged with two counts of home invasion. Both counts required the State to prove that defendant knowingly and without authority entered Boucher's residence with the intent to cause injury to another individual. 720 ILCS 5/19-6(a)(2) (West 2018).

¶ 22     Here, the jury's verdict is clearly supported by the evidence. The evidence showed that Boucher, Reichard, and Walls heard a window break. Reichard witnessed defendant enter the Boucher's residence through the broken window. Boucher testified that she did not let defendant into her home. Walls witnessed legs crawling through the broken window. Glass was both inside and outside the residence. Defendant attacked and injured both Reichard and Boucher once inside the residence, damaging a door to escape when Boucher called the police. Defendant asked Rosenak to bring him to the house on Wiswall Street where he broke the window. This evidence is sufficient to establish defendant's guilt.

¶ 23     Further, the court clearly considered the placement of the broken glass and defendant's claims when it rendered its decision. The court mentions the glass specifically, finding that the glass outside the residence was immaterial considering the neighbor witnessed legs crawling in through the window. It further discussed the evidence presented at trial and indicated that it found no reliable evidence that defendant was let in or otherwise authorized to be in the residence. Accordingly, the court's decision to deny defendant's motion was reasonable and, therefore, not an abuse of discretion.

¶ 24     Next, defendant contends that the court erred in denying his motion for new trial, or in the alternative, a JNOV due to an improper comment made by the prosecutor during opening

statements. Defendant specifically challenges the prosecutor's statement that defendant went to the residence "acting as a collection man. One of Tony Soprano's guys."

¶ 25 Defendant failed to make a contemporaneous objection to this comment and did not raise the issue in his written posttrial motion. "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.) *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). A reviewing court may remedy plain errors affecting substantial rights, even if those errors were not objected to during trial or raised in the posttrial motion. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error rule may be invoked in two limited circumstances, where: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under both prongs of the plain error doctrine, the defendant has the burden of persuasion. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). If the defendant fails to meet his burden, the procedural default will be honored. *Id.*

¶ 26 Defendant does not ask for plain error review of this issue, nor does he argue how either prong of the plain error doctrine is satisfied. Where a defendant fails to argue that the evidence was closely balanced or explain why the error is so severe that it must be remedied to preserve the integrity of the judicial process, he forfeits plain error review. *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000). As defendant has made no argument for plain error review under either prong, we must honor his forfeiture.

¶ 27                                   III. CONCLUSION

¶ 28 The judgment of the circuit court of Peoria County is affirmed.

¶ 29        Affirmed.