NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221080-U

NOS. 4-22-1080, 4-22-1081 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 25, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Tal. B. and Tak B., Minors; | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|     Petitioner-Appellee, | ) | Nos. 19JA81 |
| | ) |     19JA82 |
|     v. | ) | |
| ISAAC B., | ) | Honorable |
|     Respondent-Appellant). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |
| | ) | |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's finding respondent was unfit under section 1(D)(*l*) of the
Adoption Act was not against the manifest weight of the evidence.

¶ 2    In September 2021, the State filed a motion to terminate the parental rights of
respondent, Isaac B., as to his minor children, Tal. B (born May 13, 2008) and Tak. B. (born
September 29, 2009). The children's mother is not a party to this appeal. However, she appealed
the termination of her parental rights in appellate case Nos. 4-22-1082, 4-22-1083, and 4-23-
1084. In December 2022, the trial court granted the State's petition and terminated respondent's
parental rights.

¶ 3    Respondent appeals, asserting the trial court erred (1) by taking judicial notice of
the previous court file in the matter and (2) in determining respondent was unfit because he

failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In October 2019, the State filed a petition for adjudication of wardship, alleging respondent's children were neglected by their mother under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) in that the children's environment was injurious to their welfare. The State alleged in part the children's mother admitted being addicted to methamphetamine, was currently on felony probation for possession of methamphetamine, had lost her employment, and was to be evicted from her apartment. The trial court placed temporary custody and guardianship of the children with the Department of Children and Family services (DCFS).

¶ 6        The temporary custody order noted respondent had not received notice and was not present at the hearing because his whereabouts were unknown. It also ordered there would be no visitation until further order of the trial court. Respondent did not participate in the initial service plan in the case. A summons for respondent to appear was returned unserved, and he was served by publication in December 2019. Respondent did not appear at the adjudicatory hearing held in July 2020. Respondent also did not appear at the dispositional hearing held on October 26, 2020, during which the court adjudicated the children as neglected and placed guardianship with DCFS.

¶ 7        On September 21, 2021, the State filed a petition for termination of parental rights, alleging in part respondent was unfit under section 1(D)(*l*) of the Adoption Act (750 ILCS 50/1(D)(*l*) (West 2020)) for failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare. The petition alleged the children's mother was unfit

under section 1(D)(m)(i), (ii) of the Adoption Act (*id.* § 1(D)(m)(i), (ii)) for failure to make (1) reasonable efforts to correct the conditions that were the bases for the removal of the children and (2) reasonable progress toward the return of the children to respondent's care within nine months after the adjudication of neglect. The State filed a document listing the nine-month period as between July 7, 2020, and April 6, 2021. The State later amended the nine-month period to include April 6, 2021, to January 7, 2022. On October 6, 2021, respondent made his first appearance in the case.

¶ 8 On June 8, 2022, the trial court terminated respondent's parental rights after a hearing, and respondent appealed. However, in July 2022, the court vacated the order terminating respondent's parental rights because the State had been represented by an unlicensed attorney at the hearing. On December 13, 2022, the court conducted a new hearing. Respondent appeared *pro se*.

¶ 9 Delaney McDonald, a therapist at Chaddock, the agency designated by DCFS to manage the case, testified she was the children's caseworker from October 2020 to December 2021. McDonald identified exhibits showing respondent's service plans and testified about respondent's progress with respect to the goals and tasks stated in the plans.

¶ 10 Regarding the plan covering the period from October 2020 to April 2021, McDonald reported respondent received an unsatisfactory rating on all goals in the plan, which consisted of substance abuse, mental health, cooperation, and parenting goals, because he contacted her only once during this period. McDonald had no knowledge of whether respondent participated in any services. He had no visitation, as that had been suspended at the temporary custody hearing. Respondent called McDonald once on October 28, 2020, asked about the

children, and said he wanted to see them "against court order." McDonald set up an appointment to meet with him the next day and he did not show up.

¶ 11	Regarding the plan covering the period from April 2021 to October 2021, respondent again received unsatisfactory ratings on all his goals because of limited contact. Respondent called McDonald in July 2021 and left a voicemail. McDonald could not recall the substance of the voicemail. Respondent did not answer when McDonald returned the call and did not have his own voicemail activated. Respondent declined to ask any questions of McDonald at the hearing.

¶ 12	Jessica Fuller, a caseworker at Chaddock, testified about the service plan in effect between October 2021 and April 2022. Respondent yet again received unsatisfactory ratings on all his goals because Fuller had no contact with him during that time and he made no attempts to establish contact. Fuller stated he had an "incarcerated parent service plan as he was lodged in the Department of Corrections." After the period ended, Fuller spoke with respondent in November 2022. At that time, respondent had completed inpatient substance-abuse treatment and was discharged to a sober living facility. He also completed eight hours of parenting classes and a mental-health assessment. He had sent two cards to the children, one to Tal. B and one to Tak. B.

¶ 13	Following Fuller's testimony, the State entered into evidence exhibits showing that, on August 7, 2020, respondent pleaded guilty to charges of criminal trespass to a residence and resisting a peace officer. On March 7, 2022, he was charged with unlawful possession of methamphetamine. The State also asked the trial court to take judicial notice of "the instant proceedings, 19-JA-81, including the disposition and adjudication in this matter." The court took judicial notice, and respondent did not object. Respondent declined to present any evidence.

¶ 14　　　　The trial court stated it considered all the evidence. The court noted the two nine-month periods and stated there were substantial times when respondent was not in contact with the caseworkers. The court also noted respondent's visitation was suspended and never resumed, and he never engaged in services. The court then specifically stated the allegation against respondent was "that he failed to make any reasonable degree of interest, concern, or responsibility as to the children's welfare."

¶ 15　　　　The trial court found the State proved the allegations in the petition by clear and convincing evidence and proceeded to hear evidence concerning whether it was in the children's best interest to terminate parental rights. During that portion of the proceedings, respondent elicited testimony from Fuller that he was currently working second shift, making $15 per hour, was working on substance-abuse services, and had completed a parenting class and mental-health assessment. He still lacked stable housing, as he was living in the sober living house.

¶ 16　　　　After hearing evidence about the children's current placements, the trial court found the State proved by a preponderance of the evidence that it was in the best interest of the children to terminate parental rights and change the goals of their cases to adoption or guardianship.

¶ 17　　　　This appeal followed.

¶ 18　　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　Respondent contends the trial court erred (1) by taking judicial notice of the previous court file and (2) in determining he was unfit based on a failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare. Respondent does not argue the court erred in its best-interest determination.

¶ 20 We first note respondent forfeited his argument that the trial court erred in taking judicial notice of the court file because respondent never raised the issue in the trial court. A respondent's failure to object forfeits consideration of the claimed error on appeal unless the respondent can demonstrate plain error See *In re M.W.*, 232 Ill. 2d 408, 430-31, (2009). Respondent presents no argument that plain error applies. Thus, respondent has forfeited any plain-error claim on appeal. See *People v. Nieves*, 192 Ill. 2d 487, 503 (2000); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Even assuming, *arguendo*, we were to find the court erred by taking judicial notice of the file, respondent failed to show any prejudice from the error because, as we discuss below, the evidence that he was unfit was independently strong, and nothing in the record on appeal suggests the court would have changed its determination that respondent was unfit if it had declined to take judicial notice of the file.

¶ 21 Involuntary termination of parental rights under the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2020)) is a two-step process. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 67. The State must first prove by clear and convincing evidence that the parent is unfit under any single ground listed in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *Id.*

¶ 22 We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *Id.* ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the [trial] court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *Id*. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 23          Section 1(D)(b) of the Adoption Act provides the grounds for determining unfitness include "[f]ailure to maintain a reasonable degree of interest, concern[,] or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2020). The language of section 1(D)(b) is in the disjunctive; therefore, any of the three elements may be considered individually as a ground for unfitness. This court has recognized that, when examining allegations under this section, the trial court must (1) focus on a parent's reasonable efforts, not the success of those efforts and (2) consider any circumstances that may have hindered her ability to visit, communicate with, or otherwise show interest in the child. *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005). However, a parent is not fit merely because he or she has demonstrated some interest or affection towards the child. *Id.* (quoting *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004)). "Rather, a parent's interest, concern, or responsibility must be reasonable." *Id.*

¶ 24          Here, the record shows the trial court's determination was not against the manifest weight of the evidence. During the entire course of the proceedings, respondent was almost entirely absent and took no action on meeting the goals of the service plan. At best, he asked about the children twice during a period of over two years and, toward the end of the proceedings, he sent each child a card. The two instances he did contact caseworkers, he failed to follow through. Although the record shows he was incarcerated during a portion of the proceedings, he failed to show any interest or concern whatsoever for his children's welfare during his incarceration.

¶ 25          Respondent argues the trial court erred by considering his lack of efforts only during the nine-month time periods alleged in the petition regarding the children's mother's fitness. However, the court stated it considered all the evidence. Further, even though defendant was employed at the time of the hearing, seeking treatment, and had taken a parenting class, he

- 7 -

still failed to demonstrate he showed a reasonable interest in his children when the only evidence of his interaction with them, inquiry about them, or expression of concern was sending each one a card. Thus, the facts do not clearly demonstrate the court should have reached the opposite result in finding that respondent showed a complete lack of interest, concern, or responsibility for the children's welfare. Accordingly, the court's determination that respondent was unfit was not against the manifest weight of the evidence.

¶ 26                                    III. CONCLUSION

¶ 27         For the reasons stated, we affirm the trial court's judgment.

¶ 28         Affirmed.