2026 IL App (1st) 231633-U

No. 1-23-1633

Order filed February 3, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 204002982 |
| | ) | |
| PETER VALEZ, | ) | Honorable |
| | ) | Celestia L. Mays, |
| Defendant-Appellant. | ) | Eulalia V. De La Rosa, |
| | ) | Rouhy J. Shalabi, |
| | ) | John W. Wilson, and |
| | ) | Teresa Molina, |
| | ) | Judges, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction over his contentions the trial court failed to properly admonish him of his right to counsel and denied him his right to counsel.

¶ 2    Following a bench trial, defendant Peter Valez was found guilty of driving on a revoked license and failing to use a turn signal. Defendant was initially represented by counsel but

subsequently represented himself at hearings on his *pro se* pretrial motions and at trial. He appeals, arguing the trial court did not properly admonish him of his right to counsel as supreme court rules require (see Ill. S. Ct. R. 401(a) (eff. July 1, 1984)) and that it affirmatively denied him his Sixth Amendment right to counsel.

¶ 3       After a November 3, 2020, traffic stop, defendant was charged with driving on a revoked license (625 ILCS 5/6-303(a) (West 2020)) and issued citations for failing to use a turn signal (625 ILCS 5/11-804(b) (West 2020)) and operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2020)).

¶ 4       At defendant's first court appearance on December 10, 2020, the court—overseen by the Honorable Celestia L. Mays—informed him that the "main charge" against him was driving on a revoked license and that he would need an attorney. Defendant requested a continuance in order to file a motion to represent himself, "as well as a few other motions." The court advised him to obtain an attorney, stating "these misdemeanors do carry jail time." Defendant responded that he understood.

¶ 5       At defendant's next appearance on February 11, 2021, the Honorable Eulalia V. De La Rosa presided over the court. Defendant told the court he did not hire an attorney because he could not afford one. The court appointed the Office of the Public Defender to represent him, and an assistant public defender filed her appearance that day. Over the following year, the case was continued multiple times, including for the assistant public defender to file a motion to quash arrest and suppress evidence.

¶ 6       On February 10, 2022, the Honorable Rouhy J. Shalabi presided over the court. A different assistant public defender appeared and informed the court that defendant wished to dismiss the

Office of the Public Defender. Defendant stated he was "in the process" of hiring an attorney. The court granted the public defender leave to withdraw and continued the case, stating, "You come back here with a lawyer. I don't want to hear excuses about I can't afford it or anything else."

¶ 7     At the next court date on March 10, 2022, defendant did not have an attorney and requested to represent himself. The court—presided over by Judge Shalabi—told him he could do so, but he would be held to the same standards and faced "up to a year in jail, $2500 fine or a combination of both." Defendant responded, "Yes, your Honor," and said he wanted to file a motion to quash arrest and suppress evidence.

¶ 8     On April 14, 2022, defendant informed the court he intended to file a motion to dismiss. On May 12, 2022, the Honorable John W. Wilson presided over the court and held a hearing on the motion, in which defendant claimed the State had tampered with evidence. During argument, defendant stated, "I started representing myself after I terminated the Office of the Public Defenders" because "if somebody is not going to do anything that's in the best of my interests, which is hear a Motion to Quash Arrest and Suppress Evidence, then obviously they are not working for me, they are working against me." After hearing argument, the court granted the State's motion for a directed finding and struck the motion to dismiss. Defendant then stated he would file a motion to quash arrest and suppress evidence and would "probably be doing that through a paid attorney."

¶ 9     At the next court date, the court—presided over by the Honorable Teresa Molina—asked who defendant's attorney was, and defendant replied, "Your Honor, I was representing myself. I was going to ask for a continuance to obtain an attorney." The court granted his request for a 60-day continuance.

¶ 10 The transcript of the next court date, August 11, 2022, is not included in the record on appeal. The court sheet from that date in the common law record indicates defendant appeared *pro se* and the case was continued for a motion to be filed.

¶ 11 On September 8, 2022, defendant filed a *pro se* motion to quash arrest and suppress evidence. He represented himself at a hearing on the motion before Judge Molina on January 13, 2023, arguing police had no probable cause for the traffic stop. When the court asked whether the motion was the one filed previously, defendant stated, "That was the one that was filed by the Public Defender that was never heard prior to me terminating the Public Defender's Office because they refused to hear the motion." After defendant was unable to lay a proper foundation for evidence he wanted to introduce, he stated, "I guess I'm going to have to retry this motion with a paid attorney, your Honor." The court informed him, "That's not how it works. You don't get to keep redoing the same motion." It granted the State's motion for a directed finding and allowed defendant a month to hire an attorney.

¶ 12 On March 2, 2023, defendant informed the court—presided over by Judge Mays—that he wanted to represent himself and file another motion to quash arrest and suppress evidence. He stated, "I started off with the Public Defender's Office. I ended up terminating the Public Defender's Office because they filed a motion to quash arrest and they never wanted to hear it. They kept requesting me to cop out. *** I fired her because insufficient counsel." He later asked, "Can I hire a private attorney and start this case all over again?" The court informed defendant he always had the right to hire an attorney, but he could not begin again and the 30-day deadline to file a motion to reconsider had passed. Defendant repeated he wanted to hire an attorney. The court allowed a two-month continuance for defendant to do so, stating, "We are going to mark this final.

*** If you don't hire a lawyer, sir, that is not an excuse as to why this trial is not going to go forward." Defendant replied, "Yes, your Honor."

¶ 13     Defendant did not hire an attorney and continued to represent himself on May 4, 2023, when the matter proceeded to a bench trial before Judge Wilson.

¶ 14     The State called Franklin Park police officer Pellikan, whose first name does not appear in the record on appeal. Pellikan testified that on November 3, 2020, he observed defendant change lanes without signaling. Pellikan followed in a police vehicle and conducted a traffic stop. He approached defendant's vehicle and observed "a white powdery substance" on defendant's face and clothing. Pellikan ordered defendant out of the vehicle and, after searching defendant's driver's license information in a database, learned his license was revoked for driving under the influence. Pellikan then arrested defendant, and another officer transported him to a police station. On cross-examination, Pellikan said defendant told him he had consumed cocaine an hour before driving. The State introduced defendant's driving abstract showing that his license was revoked.

¶ 15     Defendant did not testify, but he claimed that dispatch audio showed officers had asked for a transport vehicle before making the traffic stop. Defendant described the dispatch audio but did not present it at trial.

¶ 16     In closing, defendant argued police had "no legal authority for the initial stop," and thus the State could not prove its case. The State argued the evidence showed defendant drove with a revoked license.

¶ 17     The court found defendant guilty of driving on a revoked license and failing to use a turn signal, but not guilty of operating an uninsured vehicle. Defendant made a motion to reconsider, arguing Pellikan did not have authority for the traffic stop because the location was outside his

jurisdiction. The court denied the motion and sentenced defendant to 18 months' conditional discharge, 240 hours of community service, and $439 in fines, fees, and costs for driving on a revoked license, plus a concurrent sentence of four months' supervision for failing to use a turn signal.

¶ 18     Defendant appeals, arguing first that the trial court did not properly admonish him pursuant to Supreme Court Rule 401(a) when it allowed him to proceed *pro se*. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Second, he contends the trial court affirmatively denied his Sixth Amendment right to counsel when, after he dismissed the public defender and said he was "in the process" of hiring an attorney, the court stated, "You come back here with a lawyer. I don't want to hear excuses about I can't afford it or anything else." Defendant suggests this statement meant "the court would require him to proceed *pro se*" if he could not afford private counsel. He further argues the court failed to find his waiver of counsel was knowing, intelligent, and voluntary.

¶ 19     In response, the State contends defendant forfeited his Rule 401(a) claim by failing to properly preserve it, and defendant could not establish plain error where the court substantially complied with the rule. Regarding defendant's second claim, the State asserts that the context shows defendant misinterprets the court's comments where the court was instructing him not to cause further delay, and the record shows defendant knowingly and intelligently waived his right to counsel.

¶ 20     After reviewing the record, we find defendant forfeited both claims by failing to make contemporaneous objections or to include them in a posttrial motion. See *People v. Hunt*, 2016 IL App (1st) 132979, ¶ 15.

¶ 21    Generally, Rule 401(a) violations are reviewable under the first prong of the plain error doctrine (*People v. Ratliff*, 2024 IL 129356, ¶ 43) and denial of counsel is a structural error reviewable under the second prong (*People v. Moon*, 2022 IL 125959, ¶¶ 28-29). The plain error doctrine is "a narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process." *Id.* ¶ 21. The defendant bears the burden of persuasion under both prongs. *People v. Reese*, 2017 IL 120011, ¶ 69.

¶ 22    However, "[a] defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Here, despite the State arguing forfeiture and providing ample discussion of the plain error doctrine in its response brief, defendant has failed to argue it. Indeed, the words "plain error" do not appear in either his opening or reply brief. As such, defendant has forfeited any claim of plain error. See *id.* at 545-46 ("when a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review"); see also *People v. Nieves*, 192 Ill. 2d 487, 503 (2000) (defendant waived plain error by failing to argue it).

¶ 23    For this reason, we affirm the judgment of the trial court.

¶ 24    Affirmed.